**EXHIBIT 2**

*1044480699*

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
**FILED**

JUL 3 0 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

| | |
|---|---|
| JODY FEES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| AMERICAN FAMILY LIFE ASSURANCE | ) |
| OF COLUMBUS, a/k/a AFLAC, | ) |
| | ) |
| Defendant. | ) |

**CJ-2019-03012**

**DOUG DRUMMOND**

## PETITION

Comes now Plaintiff, Jody Fees, and for his cause of action against Defendant American

Family Life Insurance Company, also known as AFLAC, alleges and states as follows:

### Jurisdiction and Venue

1. Plaintiff Jody Fees is a citizen of the State of Oklahoma and a resident of Tulsa

County, State of Oklahoma.

2. Defendant American Family Life Assurance Company of Columbus ("AFLAC")

is a foreign insurance company licensed to conduct and engage in the business of insurance in the

State of Oklahoma, including Tulsa County.

3. The events which give rise to this lawsuit occurred in Tulsa County, Oklahoma.

4. The District Court of Tulsa County has jurisdiction over this matter and the parties

pursuant to 12 O.S. §§137, 187.

### Facts

5. Plaintiff hereby adopts and alleges each of the facts and allegations set forth in

paragraphs 1-4.

6.     In January 2015, Plaintiff was a full-time employee at York Plumbing of Tulsa ("York"). As such, Plaintiff had an opportunity to purchase various AFLAC insurance policies through AFLAC insurance agent Corey Macintyre ("MacIntyre").

7.     York gave MacIntyre permission to solicit York's employees for the purchase of AFLAC insurance products. The payment for AFLAC products purchased by York's employees was facilitated by York through its benefits cafeteria plan, which allowed employees to withhold a portion of their pre-tax salary to cover the cost associated with the AFLAC products.

8.     During one of MacIntyre's sales presentations to York employees, MacIntyre informed Plaintiff (and other York employees) that AFLAC's Short Term Disability Insurance Policy provided benefits in any circumstance in which the York employee covered by the policy was rendered unable to work due to an off-the-job injury.

9.     Based on MacIntyre's representations, Plaintiff purchased AFLAC Short-Term Disability Insurance Policy, No. P0H4W5R7 ("the Policy") on January 27, 2015. The Policy was renewed on January 8, 2016 and was in effect at the time of the loss that is part of the subject matter of this litigation. (*See Policy*, attached as Exhibit "1").

10.    The terms of the Policy provide **Total Disability**[1] and **Partial Disability** benefits to Policyholders disabled by **Sickness** or **Off-the-Job Injury**.

11.    The Policy includes the following definitions:

a)     **Activities of Daily Living (ADLs)**[2]: [A]ctivities used in measuring your level of personal functioning capacity.  Normally, these activities are performed without **Direct Personal Assistance**, allowing you personal independence in everyday living.

---

[1] Bolded terms are used herein as they are defined within the Policy that is attached as Exhibit "1".
[2] The ADLs are: *Bathing*: washing oneself by sponge bath or in either a tub or shower, including the task of getting into or out of the tub or shower; *Maintaining continence*: controlling urination and bowel movements, including your ability to use ostomy supplies or other devices such as catheters; *Transferring*: moving between a bed and chair, or a bed and a wheelchair; *Dressing*:

2

b)      **Total Disability**: [B]eing under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, and not working at any job.

c)      **Partial Disability**: [B]eing under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, but able to work at any job earning less than 80 percent of your Annual Income of your Full-Time Job at the time you became disabled.

d)      **Sickness**:   [A]n illness, disease, infection, or any other abnormal physical condition, independent of injury, that is first manifested and first treated more than 30 days after the Effective Date of coverage and while coverage is in force…

e)      **Off-the-Job Injury**: [A]n **Injury** that occurs while you are not working at any job for pay or benefits.

f)      **Injury**: [A] bodily injury caused directly by an accident, independent of **Sickness,** disease, bodily infirmity, or any other cause, occurring on or after the Effective Date of coverage and while coverage is in force.

g)      **Full-Time Job**: [O]ne job at which you work 19 or more hours per week for one employer for pay or benefits.

h)      **Direct Personal Assistance**:   [D]irect physical assistance from another party required to help you perform an ADL, each and every time you perform the activity, because of an inability to perform the entire activity alone with the supports and mechanical aids normally available to you.

i)      **Total Disability Coverage - Working Full-Time:** Total Disability benefits are due under the terms of the Policy when a Policyholder is working a **Full-Time Job** and suffers a **Sickness** or **Off-the-Job Injury** that results in **Total Disability**.  The **Sickness** or **Off-the-Job Injury** must cause **Total Disability** within ninety (90) days of the Policyholders last medical treatment.  No benefits are due until the fifteenth (15) day of the disability.

j)      **Total Disability Coverage - Not Working Full-Time:** Total Disability benefits are due under the terms of the Policy when a Policyholder is not working a **Full-Time Job** when he or she suffers a **Sickness** or **Off-the-Job Injury** that renders him or her unable to perform three (3) or more ADLs and requires **Direct Personal Assistance** to perform those ADLs.  The **Sickness** or **Off-the-Job Injury** must cause **Total Disability** within ninety

---

putting on and taking off all necessary items of clothing; Toileting:  getting to and from a toilet, getting on and off a toilet, and performing associated personal hygiene; Eating:  performing all major tasks of getting food into your body."

(90) days of the Policyholders last medical treatment. No benefits are due until the fifteenth (15) day of the disability.

k)    **Partial Disability Coverage:** **Partial Disability** benefits are due under the terms of the Policy when a Policyholder is working a **Full-Time Job** and suffers a **Sickness** or **Off-the-Job Injury** that causes a **Partial Disability**. The **Sickness** or **Off-the-Job Injury** must cause **Partial Disability** within ninety (90) days of the Policyholders last medical treatment.

12.    For both **Total Disability** and **Partial Disability**, the Policy provides that benefits are payable for *separate* benefit claims for the same or a related condition so long as they are separated by a period of at least 180 days.

13.    In the fall of 2015, Plaintiff slipped and twisted his left knee while walking on gravel and injured his left knee. He was not on the job at the time of the injury. The injury caused him to suffer significant debilitating pain that affected his daily living activities, including squatting and kneeling which are fundamental to his work as a plumber.

14.    Plaintiff sought treatment for the injury and, on December 21, 2015, Dr. Kevin Dukes performed a diagnostic arthroscopy on his left knee. During the procedure, Dr. Dukes debrided a ganglion cyst from Plaintiff's ACL as well as frayed portions of Plaintiff's lateral meniscus. Dr. Dukes also identified that Plaintiff suffered from patellar maltracking and performed a lateral release using underwater electrocautery.

15.    During his recovery from the injury and resulting medical procedures, Plaintiff was unable to perform the material and substantial duties of his job as a plumber and made a claim for disability benefits under the Policy.

16.    AFLAC paid Plaintiff for this disability claim.

17.    Plaintiff suffered another injury to his left knee while walking down a boat ramp in the summer of 2016. Dr. Dukes examined Plaintiff and an MRI was ordered. The MRI performed on August 25, 2016, revealed a partial-thickness tear of the lateral meniscus in Plaintiff's left knee.

4

Dr. Dukes informed Plaintiff that the injury, although painful, did not require surgical intervention at that time. Dr. Dukes also advised Plaintiff that he would treat Plaintiff on an "as needed" basis.

18.     Plaintiff's symptoms persisted and approximately one year later, on August 23, 2017, Plaintiff again sought medical care from Dr. Dukes for pain in his left knee associated with "squatting and crouching type activities" – again, essential activities for a plumber.  As a result of Plaintiff's persistent pain, Dr. Dukes recommended Plaintiff "proceed with… surgical arthroscopy."

19.     In September 2017, Plaintiff's employment with York Plumbing was terminated due to a diminishing work load.[3]  Despite no longer being employed by York Plumbing, Plaintiff made arrangements to retain the Policy and continued to pay premiums on the Policy.

20.     Plaintiff founded his own business, J & L Plumbing, LLC, on or about October 10, 2017 and thereafter worked a **Full-Time Job** at J & L Plumbing, LLC.

21.     On December 5, 2017, Plaintiff followed Dr. Dukes' August 23, 2017 medical recommendation and another surgical arthroscopy was performed on his left knee.  Following the surgery, Plaintiff made a claim for benefits under the Policy because he was unable to perform the material and substantial job functions of a plumber.   Plaintiff's medical providers did not release him to return to work until April 8, 2018.

22.     Plaintiff is entitled to **Total Disability Benefits** under the terms of the Policy as set forth in detail in Paragraph 11(i), above. Plaintiff suffered an injury to his left knee.  The injury occurred while Plaintiff was a full-time employee of York, but while he was "not working at any job for pay or benefits."  From the time of said injury until the time of his surgery in December

---

[3] Plaintiff's termination was not related to his job performance or related to his left knee injury.

2017, Plaintiff was under the care of Dr. Kevin Dukes.  Finally, during his recovery, Plaintiff was unable to perform the material and substantial duties of a plumber.

23.     Soon after Plaintiff submitted his claim, AFLAC made clear that it had determined Plaintiff did not have a **Full-Time Job** at the time he suffered his **Off-the-Job Injury.**

24.     AFLAC focused its investigation on investigating whether Plaintiff was able to perform the **Activities of Daily Living** ("ADL's") as set forth in the Policy.  Under the terms of the Policy, the question of whether Plaintiff was able to perform these ADL's only matters in the event a policyholder is *not* working a **Full-Time Job** when an **Off-the Job Injury** or **Sickness** occurs.

25.     Soon after Plaintiff's claim was made, AFLAC Agent MacIntyre notified Plaintiff that AFLAC's investigation required information related to the causation of his disability as well as a letter substantiating Plaintiff's inability to perform ADL's.  AFLAC also requested an "Employer Statement" and tax returns related to Plaintiff's self-employment.

26.     In the months that followed, Plaintiff endured a labyrinthine claims handling process in which AFLAC made numerous duplicative document requests of both Plaintiff and Dr. Dukes.[4] Although Plaintiff and Dr. Dukes complied with these requests as best they could, AFLAC consistently requested "more documentation" and "more information" before it could make a claims decision.

27.     Many of the repeated and duplicative document requests were the result of formulaic, computer-generated correspondence. In several instances, having already received the requested documents, this correspondence provided convoluted and confusing information and

---

[4] Roughly six months after the claim had been submitted, Agent MacIntyre apologized to Plaintiff for the lengthy and troublesome claims-handling process.

indicating Plaintiff's claim would be closed if the requested documentation or information was not provided again.

28.     On June 6, 2018, AFLAC notified Plaintiff it had closed his claim.

29.     On June 18, 2018, AFLAC notified Plaintiff his claim was denied.

30.     On October 28, 2018, attorney Mark Heidenreiter contacted AFLAC on Plaintiff's behalf.  Heidenreiter requested AFLAC pay Mr. Fees the disability policy benefits to which Plaintiff was entitled and submitted more than 40 pages of documents in support of the claim.

31.     AFLAC confirmed its claim denial on November 9, 2018 and, after additional correspondence from Heidenreiter, again on December 14, 2018.

32.     Heidenreiter contacted AFLAC on January 21, 2019 in his continued effort to provide AFLAC the information needed to pay Plaintiff's claim.  On March 7, 2019, Heidenreiter was notified that AFLAC was continuing to research Plaintiff's claim.

33.     Plaintiff's claim remains unpaid.

34.     There are no Policy exclusions applicable to Plaintiff's claim for benefits and Plaintiff complied and cooperated with all of AFLAC's requests, including the appeals process regarding the repeated denial of his claim.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

35.     Plaintiff hereby adopts and alleges each of the facts and allegations set forth in paragraphs 1-34.

36.     At the time of Plaintiff's disability, Plaintiff was insured under AFLAC Short-Term Disability Insurance Policy, No. P0H4W5R7 ("the Policy").

37.     Plaintiff made a claim to Defendant for payment under the Policy.

38.     Plaintiff is entitled to insurance benefits under the Policy.

7

39.     Defendant repeatedly denied Plaintiff's claim despite having numerous opportunities to pay the claim.

40.     Defendant's denial of Plaintiff's claim is a breach of the insurance contract.

41.     As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff has suffered damages less than Seventy-Five Thousand Dollars ($75,000).

## SECOND CAUSE OF ACTION –
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

42.     Plaintiff hereby adopts and realleges each of the facts and allegations set forth in paragraphs 1-41 above.

43.     As an insurance company licensed to do business in the State of Oklahoma, Defendant is bound by Oklahoma statutory and common law to honor its contractual obligations to insureds in compliance with the duty of good faith and fair dealing.  As such, Defendant has and continues to have a duty to deal fairly and in good faith with Plaintiff, its insured.

44.     Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant must fully and fairly consider and evaluate the facts and circumstances of Plaintiff's claim.  Defendant conducted a biased, sham investigation with regard to Plaintiff's claim and put its own interests ahead of Plaintiff's by ignoring evidence in favor of paying Plaintiff's disability claim.

45.     Moreover, Defendant focused its investigation on finding ways to deny Plaintiff's claim (focusing on the notes of Dr. Dukes' and whether Plaintiff was able to complete ADL's) rather than focusing its investigation on the applicable insurance coverage and conducting an even-handed investigation designed to pay benefits owed to its policyholder.  Defendant also relied on a speculative, subjective basis to deny Plaintiff's claim.

46.     Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant has implemented a claims handling system designed to delay claims, frustrate insureds with repeated and confusing requests for information and that encourages and incentivizes the denial of claims based on Defendant's subjective interpretation of discrepancies or other information submitted on a claim.  This is all done in an effort to minimize the amount of benefits paid to insureds.  Defendant encourages this type of claims handling environment through corporate directives and the training and supervision of its agents, customer service representatives and claims handling employees, where the duty of good faith and fair dealing is disregarded in favor of the profitability of Defendant.

47.     As a result Defendant's breach of their duty to deal fairly and in good faith, Plaintiff suffered damages in excess of Seventy-Five Thousand Dollars ($75,000).

48.     Defendant's breach of the duty of good faith and fair dealing was intentional and malicious

49.     Punitive damages should be awarded against Defendant in an amount sufficient to punish Defendant and deter others.

WHEREFORE, Plaintiff Jody Fees prays for judgment against Defendant American Family Life Assurance Company of Columbus a/k/a Aflac for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney fees, and other relief, which this Court deems just and equitable.

Respectfully submitted,

Simone Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
FULMER SILL PLLC
P.O. Box 2448
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK  73103
Phone:  (405) 510-0077
Fax:    (800) 978-1345
Email:  sfulmer@fulmersill.com
hlujan@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

10

# EXHIBIT 1





## SHORT-TERM DISABILITY POLICY

**NOTICE TO BUYER: This policy pays benefits for short-term Disability caused by Sickness or Off-the-Job Injury. Read it carefully with the Outline of Coverage, if applicable.**

## THIS IS NOT A MEDICARE SUPPLEMENT POLICY

The Named Insured shown in the Policy Schedule will be referred to as "you," "your," or "yours." **American Family Life Assurance Company of Columbus,** a stock company, will be referred to as "we," "our," "us," or "Aflac."

### CONSIDERATION

This policy is issued in consideration of statements made in your application and the payment of the premium shown in the Policy Schedule. A copy of your application is attached and is a part of this policy. The following paragraphs set forth the definitions of terms, the limitations and exclusions, the insurance benefits, and other provisions.

### YOUR RIGHT TO EXAMINE THIS POLICY

It is important to us that you are satisfied with this policy. If you are not satisfied, you may return it within 30 days after you receive it. Send it to your associate (duly licensed agent) or to Aflac Worldwide Headquarters, 1932 Wynnton Road, Columbus, Georgia 31999. You will receive a full refund of all premiums paid, and your policy will be void from its Effective Date. If you return this policy, please note in writing: "This policy is returned for cancellation and refund of premium." If we do not return any premiums paid within 30 days from the date of cancellation, we will pay interest on the proceeds.

### IMPORTANT NOTICE

**Please read your application attached to this policy. This policy is issued on the basis that the information shown on the application is correct and complete. Statements made in the application are deemed representations and not warranties. Carefully check the application. Write to us within 30 days of the date you receive this policy if any information on the application is not correct or complete. Incorrect or incomplete information may result in the denial of claims or voiding of the policy. No associate (duly licensed agent) may change this policy or waive any of its provisions.**

**WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.**

### THIS POLICY IS GUARANTEED-RENEWABLE TO AGE 75, SUBJECT TO AFLAC'S RIGHT TO CHANGE PREMIUMS BY CLASS UPON ANY RENEWAL DATE.

We agree that this policy will never be restricted by the addition of any rider without your consent, nor will renewal be refused because of any change in your health or physical condition. You are guaranteed the right to renew this policy until the policy anniversary date following your 75th birthday by the timely payment of premiums at the rate in effect at the beginning of each term, except that we may discontinue or terminate the policy if you have performed an act or practice that constitutes fraud, or have made an intentional misrepresentation of material fact, relating in any way to the policy, including claims for benefits under the policy. **Your coverage will terminate on the policy anniversary date following your 75th birthday.**

Aflac may change the established premium rate, but only if the rate is changed for all policies of this class. While this policy is in force, no change will be made in your class because of age, sex, or physical condition. "Class" means all policies of this form number and premium classification in your state that are then in force. If the established premium rate changes, Aflac will notify you in writing at your last known address, as shown in our records, at least 30 days before the change becomes effective.

### PRE-EXISTING CONDITION LIMITATIONS

A "Pre-existing Condition" is an illness, disease, infection, disorder, condition or injury for which, within the 12-month period before the Effective Date of coverage, medical advice, consultation, or treatment was recommended or received, or for which symptoms existed that would ordinarily cause a prudent person to seek diagnosis, care, or treatment. Disability caused by a Pre-existing Condition, including deliveries for children conceived prior to the Effective Date of coverage or reinjuries to a Pre-existing Condition will not be covered unless it begins more than 12 months after the Effective Date of coverage.

**American Family Life Assurance Company of Columbus**
**Worldwide Headquarters • 1932 Wynnton Road • Columbus, Georgia 31999**
**For assistance or information about this policy, call 1.800.99.AFLAC (1.800.992.3522).**
**For claim forms, visit our Web site at aflac.com.**

Form A57600OK                                    1                                    A57600OK.1
© 2011 Aflac All Rights Reserved

## INDEX

Named Insured...................................................................................................Policy Schedule

Definitions .................................................................................................................Part 1

Limitations and Exclusions ......................................................................................Part 2

Uniform Provisions ...................................................................................................Part 3

Benefits .....................................................................................................................Part 4

### Policy Schedule

| | |
|---|---|
| NAMED INSURED: Jody Fees | |
| TYPE OF COVERAGE: Individual | POLICY NUMBER: P0H4W5R7 |
| MODE OF PAYMENT: Monthly | PREMIUM: $55.25 |

COVERAGE:  CSDAYR        EFFECTIVE DATE:      02/02/15        $55.25

```
                                MONTHLY DISABILITY BENEFIT PAYABLE:
CSDAYR   SHORT-TERM DISABILITY              25 UNITS =    $2,500.00
         ELIMINATION PERIOD    BENEFIT PERIOD
         INJURY  : 14 DAYS     TOTAL DISABILITY: 6 MONTHS
         SICKNESS: 14 DAYS     PARTIAL DISABILITY:  3 MONTHS
```

In witness whereof, Aflac's president and secretary signed this policy in Columbus, Georgia, as of the policy Effective Date shown in the Policy Schedule.

Teresa White, President

J. Matthew Loudermilk, Secretary

Form  A57600OK                               2                               A57600OK.1

**This policy is a legal contract between you and Aflac.**
**READ YOUR POLICY CAREFULLY.**

**Part 1**
**DEFINITIONS**



**A. ACTIVITIES OF DAILY LIVING (ADLs):** activities used in measuring your level of personal functioning capacity. Normally, these activities are performed without Direct Personal Assistance, allowing you personal independence in everyday living.

The ADLs are:

1. Bathing: washing oneself by sponge bath or in either a tub or shower, including the task of getting into or out of the tub or shower;

2. Maintaining continence: controlling urination and bowel movements, including your ability to use ostomy supplies or other devices such as catheters;

3. Transferring: moving between a bed and a chair, or a bed and a wheelchair;

4. Dressing: putting on and taking off all necessary items of clothing;

5. Toileting: getting to and from a toilet, getting on and off a toilet, and performing associated personal hygiene; and

6. Eating: performing all major tasks of getting food into your body.

**B. ANNUAL INCOME:** your taxable (gross) annual income from your Full-Time Job. If you are self-employed, the term "Annual Income" means an average of the net earnings reported to the Internal Revenue Service for the past two years from your business.

**C. BENEFIT PERIOD:** the maximum number of days after the Elimination Period, if any, for which you can be paid benefits for any period of Disability. Each new Benefit Period is subject to a new Elimination Period. See the Policy Schedule for the Benefit Period you selected. For the purposes of this calculation, a "month" is defined as 30 days for which benefits are paid.

**D. COMPLICATIONS OF PREGNANCY:** (1) conditions requiring medical treatment prior to or subsequent to the termination of a pregnancy whose diagnoses are distinct from pregnancy but that are adversely affected by pregnancy or caused by pregnancy, such as acute nephritis; nephrosis; cardiac decompensation; missed abortion; disease of the vascular, hemopoietic, nervous, or endocrine systems; and similar medical and surgical conditions of comparable severity; (2) hyperemesis gravidarum and pre-eclampsia requiring hospital confinement, non-elective cesarean, ectopic pregnancy that is terminated, and spontaneous termination of pregnancy that occurs during a period of gestation in which a viable birth is not possible. Complications of Pregnancy will be covered to the same extent as a Sickness.

Complications of Pregnancy do not include premature delivery without incidence, multiple gestation pregnancy, false labor, occasional spotting, prescribed rest during pregnancy, morning sickness, and similar conditions associated with the management of a difficult pregnancy not constituting a classifiably distinct pregnancy complication. Cesarean deliveries are not considered Complications of Pregnancy.

**E. DAILY DISABILITY BENEFIT:** one-thirtieth of the applicable monthly Disability benefit shown in the Policy Schedule.

© 2011 Aflac. All Rights Reserved

**F.  DIRECT PERSONAL ASSISTANCE:**  direct physical assistance from another party required to help you perform an ADL, each and every time you perform that activity, because of an inability to perform the entire activity alone with the supports and mechanical aids that are normally available to you.

**G.  DISABILITY:**

   **1.  TOTAL DISABILITY:** being under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, and not working at any job.

   **2.  PARTIAL DISABILITY:** being under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, but able to work at any job earning less than 80 percent of your Annual Income of your Full-Time Job at the time you became disabled.

**H.  EFFECTIVE DATE:**  the date(s) coverage begins as shown in the Policy Schedule. The Effective Date of this policy **is not** the date you signed the application for coverage.

**I.  ELIMINATION PERIOD:**  the number of consecutive days at the beginning of your period of Disability for which no benefits are payable. See the Policy Schedule for the Elimination Period you selected. Each new Benefit Period is subject to a new Elimination Period.

**J.  FULL-TIME JOB:**  one job at which you work 19 or more hours per week for one employer for pay or benefits.

**K.  IMMEDIATE FAMILY:**  anyone related to you in the following manner: spouse; brothers or sisters (includes stepbrothers and stepsisters); children (includes stepchildren); parents (includes stepparents); grandchildren; father- or mother-in-law; brother- or sister-in-law; and spouses, as applicable, of any of these.

**L.  INJURY:**  a bodily injury caused directly by an accident, independent of Sickness, disease, bodily infirmity, or any other cause, occurring on or after the Effective Date of coverage and while coverage is in force.

**M.  MEDICALLY NECESSARY:**  treatment, services, or supplies necessary and appropriate for the diagnosis or treatment of a Sickness or an Injury based upon generally accepted medical practice.

**N.  OFF-THE-JOB INJURY:**  an Injury that occurs while you are not working at any job for pay or benefits.

**O.  ON-THE-JOB INJURY:**  an Injury that occurs while you are working at any job for pay or benefits.

**P.  PHYSICIAN:**  a person legally qualified to practice medicine, other than you or a member of your Immediate Family, who is licensed as a Physician by the state where treatment is received to treat the type of condition for which a claim is made.

**Q.  SICKNESS:**  an illness, disease, infection, or any other abnormal physical condition, independent of Injury, that is first manifested and first treated more than 30 days after the Effective Date of coverage and while coverage is in force. If an illness, disease, infection, or any other physical condition is diagnosed or treated by a Physician within the first 30 days after the Effective Date of coverage, any resulting Disability will not be covered unless it begins more than 12 months after the Effective Date of coverage.



**Part 2**
## LIMITATIONS AND EXCLUSIONS

**A.** Disability caused by a Pre-existing Condition or reinjuries to a Pre-existing Condition will not be covered unless it begins more than 12 months after the Effective Date of coverage.

**B.** Aflac will not pay benefits for an illness, disease, infection, or disorder that is diagnosed or treated by a Physician within the first 30 days after the Effective Date of coverage, unless the resulting Disability begins more than 12 months after the Effective Date of coverage.

**C.** Aflac will not pay benefits for a Disability that is being treated outside the territorial limits of the United States.

**D.** Aflac will not pay benefits whenever coverage provided by this policy is in violation of any U.S. economic or trade sanctions. If the coverage violates U.S. economic or trade sanctions, such coverage shall be null and void.



**E.** Aflac will not pay benefits whenever fraud is committed in making a claim under this coverage or any prior claim under any other Aflac coverage for which you received benefits that were not lawfully due and that fraudulently induced payment.

**F.** Aflac will not pay benefits for a Disability that is caused by or occurs as a result of any bacterial, viral, or micro-organism infection or infestation, or any condition resulting from insect, arachnid, or other arthropod bites or stings as a Disability due to an Injury; such disability will be covered to the same extent as a Disability due to Sickness.

**G.** Aflac will not pay benefits for a disability that is caused by or occurs as a result of your:

1. Being pregnant on the Effective Date of coverage (Complications of Pregnancy will be covered to the same extent as a Sickness);

2. Alcoholism and drug addiction;

3. Participating in, or attempting to participate in, an illegal activity that is defined as a felony, whether charged or not ("felony" is as defined by the law of the jurisdiction in which the activity takes place); or being incarcerated in any detention facility or penal institution;

4. Intentionally self-inflicting a bodily injury, or committing or attempting suicide, while sane or insane;

5. Having cosmetic surgery or other elective procedures that are not Medically Necessary;

6. Having dental treatment, except as a result of Injury;

7. Actively serving in any of the armed forces, or units auxiliary thereto, including the National Guard or Reserve;

8. Donating an organ within the first 12 months of the Effective Date of this policy;

9. Having mental or emotional disorders.

**Benefits will be paid for only one Disability at a time, even if the Disability is caused by more than one Sickness, more than one Injury, or a Sickness and an Injury.**

Form A57600OK

5

A57600OK.1
© 2011 Aflac All Rights Reserved

## Part 3
## UNIFORM PROVISIONS

**A. ENTIRE CONTRACT; CHANGES:** This policy, together with the application, endorsements, benefit agreements, riders, and attached papers, if any, constitutes the entire contract of insurance. No change in this policy is valid until approved in writing by the president and secretary of Aflac at our worldwide headquarters. Any such change must be noted hereon or attached hereto. No associate (duly licensed agent) has the authority to change this policy or to waive any of its provisions.

**B. TIME LIMIT ON CERTAIN DEFENSES:** After two years from the Effective Date of this policy, no misstatements, except fraudulent misstatements, made by you in the application shall be used to void this policy or to deny a claim for Disability commencing after the expiration of such two-year period. No claim for loss incurred or Disability commencing after 12 months from the Effective Date of coverage for this policy shall be reduced on the grounds that a Sickness or physical condition, not excluded from coverage by name or specific description, had existed prior to the Effective Date of coverage. Coverage for Pre-existing Conditions will not be reduced or denied after the policy has been in force 12 months.

**C. TERM:** You are guaranteed the right to renew this policy until the policy anniversary date following your 75th birthday by the timely payment of premiums at the rate in effect at the beginning of each term. Your coverage will terminate on the policy anniversary date following your 75th birthday. The term of this policy begins at midnight, standard time, at the place where you reside on the Effective Date shown in the Policy Schedule. It ends at midnight, at the same standard time, on the first renewal date. Each renewal term ends at midnight, at the same standard time, on the next following renewal date. Renewal dates are determined by the mode of payment. The mode of payment for the original term of this policy is shown in the Policy Schedule. An annual premium will maintain this policy in force for 12 months, semiannual for six months, quarterly for three months, and monthly for one month. Premium for a term is due on the first day of that term. **If you fail to pay your premium by the end of the grace period, coverage under this policy will terminate.** If you are receiving short-term Disability benefits on the date coverage would otherwise terminate, coverage under this policy will be extended to the earlier of the date you are no longer qualified to receive Disability benefits or to the end of the Benefit Period, whichever occurs first.

**D. GRACE PERIOD:** A grace period of 31 days will be granted for the payment of each premium falling due after the first premium. During the grace period, this policy will continue in force.

**E. MISSTATEMENT OF AGE:** If your age has been misstated on the application, the benefits will be those the premium paid would have purchased at the correct age. Aflac will refund all unearned premiums paid, less any benefits paid, if your misstated age at the time of application was outside the age limits for this policy.

**F. REINSTATEMENT:** If any renewal premium is not paid within the time granted for payment by the insured, a subsequent acceptance of premium by Aflac or by any agent duly authorized by Aflac to accept such premium, without requiring an application for reinstatement, shall reinstate the policy; provided, however that if Aflac or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the insurer or, lacking such approval, upon the forty-fifth day following the date such conditional receipt, unless Aflac has previously notified the insured in writing of its disapproval of such application is received at our worldwide headquarters. The reinstated policy will cover only loss resulting from a condition that begins on or after the date of reinstatement. In all other respects, the insured and Aflac will have the same rights thereunder as they had under the

© 2011 Aflac All Rights Reserved

policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement will be applied to a period for which premium has not been previously paid, but not to any period more than sixty (60) days prior to the date of reinstatement.

**G. MISSTATEMENT OF OCCUPATION OR INCOME:** If your occupation has been misstated, the benefits will be those that the premiums paid would have purchased for your correct occupation. If your income has been misstated, the benefit payable will be that which would have been allowed for your true income level, and any overpayment of premium will be refunded.

**H. NOTICE OF CLAIM:** Written notice of claim must be given within 60 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Aflac at our worldwide headquarters, 1932 Wynnton Rd, Columbus, GA 31999, or to your associate (duly licensed agent). The notice of claim should include the name of the covered person and the policy number.

**I. CLAIM FORMS:** When we receive a notice of claim, we will send you forms for filing proof of loss. If the forms are not sent to you within ten working days after the giving of such notice, you will meet the proof-of-loss requirements by giving us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss provision.

**J. PROOF OF LOSS:** Written proof of loss (written proofs, such as claim forms, medical bills, medical authorizations or other reasonable evidence of the claim that is ordinarily required) must be furnished to Aflac at our worldwide headquarters within 90 days after the date of such loss. Failure to furnish such proof within the time required will not invalidate or reduce any claim if it was not reasonably possible to give proof within such time. However, such proof must be furnished as soon as reasonably possible and in no event (except in the absence of legal capacity) later than 15 months from the time proof is otherwise required.

**K. TIME OF PAYMENT OF CLAIMS:** All benefits payable under this policy will be paid immediately upon receipt of due written proof of loss.

**L. PAYMENT OF CLAIMS:** All benefits will be payable to you, unless assigned by you or by operation of law. Any accrued benefits unpaid at your death will be paid to your estate. If any indemnity of this policy shall be payable to the estate of the insured, or to an insured or beneficiary who is a minor or otherwise not competent to give a valid release, the insurer may pay such indemnity, up to an amount not exceeding $1000.00, to any relative by blood or connection by marriage of an insured or beneficiary who is deemed by the insurer to be equitably entitled thereto.  Any payment made by the insurer in good faith pursuant to this provision shall fully discharge the insurer to the extent of such payment. If a covered person under this policy is eligible for and receives medical assistance from the Oklahoma Department of Human Services, the benefits payable under this policy shall be paid to that agency.  The amount of the benefits payable to the Oklahoma Department of Human Services shall be the actual medical expenses paid by the agency on behalf of the insured, subject to any benefit limitations provided by the policy.  The payments will be made after receipt by the Company, of a notice of assignment of benefits from the Oklahoma Department of Human Services.

**M. LEGAL ACTIONS:** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action may be brought after three years from the time written proof of loss is required to be furnished.

© 2011 Aflac All Rights Reserved

**N. CONFORMITY WITH STATE AND FEDERAL STATUTES:** Any provision of this policy that on its Effective Date is in conflict with the statutes of the state in which it was issued or with any federal statute is hereby amended to conform to the minimum requirements of such statutes.

**O. PHYSICAL EXAMINATIONS AND AUTOPSY:** Aflac, at its own expense, will have the right and opportunity to examine a covered person when and as often as it may be reasonably required while a claim is pending hereunder, and to make an autopsy in the case of death where autopsy is not forbidden by law.

**P. ASSIGNMENT:** Aflac will not assume responsibility for determining the validity of an assignment of your benefits to a provider of services. No such assignment of benefits will be recognized until we receive notice at our worldwide headquarters that you have specifically assigned the benefits of your Aflac policy.

**Q. OTHER INSURANCE WITH AFLAC:** If you are covered under more than one Aflac policy with Disability benefits, only one Disability benefit chosen by you or your estate, as the case may be, will be effective. Aflac will return all premiums paid for the canceled benefits from the date of duplication, less any benefits paid under these policies from such date.

**R. NARCOTICS:** Aflac shall not be liable for any loss sustained or contracted in consequence of the insured's being under the influence of any narcotic unless administered on the advice of a Physician.

**Part 4**
**BENEFITS**

**Aflac will pay the following benefits, as applicable, if your Disability is caused by a covered Sickness or covered Off-the-Job Injury and occurs while this coverage is in force. All benefits are subject to the Limitations and Exclusions, Pre-existing Condition Limitations, and other policy terms.**

Disability due to pregnancy and childbirth is payable to the same extent as a covered Sickness. Disability as a result of pregnancy that began on or before the Effective Date of coverage is not covered except for disability due to Complications of Pregnancy, which will be covered to the same extent as a covered Sickness. The maximum period of Disability allowed for Disability due to childbirth is six weeks for noncesarean delivery and eight weeks for cesarean delivery, less the Elimination Period, unless you furnish proof that your Disability continues beyond these time frames.

Benefits will be paid for only one Disability at a time, even if the Disability is caused by more than one Sickness, more than one Injury, or a Sickness and an Injury. **We reserve the right to meet with you while a claim is pending, or to use an independent consultant and Physician's statement to determine whether you are qualified to receive Disability benefits or whether you are unable to perform three or more ADLs and require Direct Personal Assistance. You must be under the care and attendance of a Physician for these benefits to be payable. Benefits will cease on the date of your death.**

**A. TOTAL DISABILITY BENEFITS:**

  1. **Working Full Time:** If you have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:

© 2011 Aflac All Rights Reserved

If your covered Sickness or covered Off-the-Job Injury causes your Total Disability within 90 days of your last treatment for your covered Sickness or covered Off-the-Job Injury, we will pay you the Daily Disability Benefit for each day of your Total Disability. This benefit is payable up to the Total Disability Benefit Period you selected and is subject to the Elimination Period shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."

You will no longer be qualified to receive this benefit upon the earlier of your: (1) being released by your Physician to perform the material and substantial duties of your Full-Time Job, or (2) working at any job.

2.  **Not Working Full Time:** If you do not have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:

If you are unable to perform three or more ADLs within 90 days of your last treatment that is a result of a covered Sickness or Off-the-Job Injury, as certified by a Physician, and you require Direct Personal Assistance to perform such ADLs, we will pay you the Daily Disability Benefit for each day you cannot perform such ADLs. This benefit is payable up to the Total Disability Benefit Period you selected and is subject to the Elimination Period shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."

You will no longer be qualified to receive this benefit upon the earlier of your: (1) being released by your Physician to perform the material and substantial duties of your Full-Time Job, (2) working at any job, or (3) Physician no longer being able to certify that you are unable to perform three or more ADLs that require Direct Personal Assistance.

Separate periods of Disability, resulting from the **same or a related condition** and not separated by 180 days or more, are considered a continuation of the prior Disability. Once the maximum Total Disability Benefit Period has been paid, you will not be eligible for a new Total Disability Benefit Period for Disability due to the same or a related condition, until 180 days after you: (1) have been released by a Physician from the prior Disability, (2) are no longer disabled, and (3) are no longer qualified to receive any Disability benefits under this policy.

Separate periods of Disability, resulting from **unrelated causes** and not separated by your returning to work at a Full-Time Job for 14 working days during which you are performing the material and substantial duties of such job, are considered a continuation of the prior Disability. Once the maximum Total Disability Benefit Period has been paid, you will not be eligible for a new Total Disability Benefit Period for Disability due to an unrelated cause, until 14 working days after you: (1) have been released by a Physician from a prior Disability, (2) are no longer disabled, and (3) are no longer qualified to receive any Disability benefits under this policy.

Periods of Disability meeting either of these separation requirements will begin a new Total Disability Benefit Period, subject to a new Elimination Period.

B.  **PARTIAL DISABILITY BENEFIT:** If you have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:

If your covered Sickness or covered Off-the-Job Injury causes your Partial Disability within 90 days of your last treatment for your covered Sickness or covered Off-the-Job Injury, we will pay you one-half of the Daily Disability Benefit for each day of your Partial Disability. This benefit is payable up to the Partial Disability Benefit Period (a maximum period of three

© 2011 Aflac. All Rights Reserved.

months) and is subject to the Elimination Period shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."

You will no longer be qualified to receive this benefit upon the earlier of your: (1) being released by your Physician to perform the material and substantial duties of your Full-Time Job, or (2) working at any job earning 80 percent or more of your pre-Disability Annual Income.

Separate periods of Disability, resulting from the **same or a related condition** and not separated by 180 days or more, are considered a continuation of the prior Disability. Once the maximum period of three months of Disability under this benefit has been paid, you will not be eligible for a new Partial Disability Benefit Period for Disability due to the same or a related condition, until 180 days after you: (1) have been released by a Physician from the prior Disability, (2) are no longer disabled, and (3) are no longer qualified to receive any Disability benefits under this policy.

Separate periods of Disability, resulting from **unrelated causes** and not separated by your returning to work at a Full-Time Job for 14 working days during which you are performing the material and substantial duties of such job, are considered a continuation of the prior Disability. Once the maximum Partial Disability Benefit Period has been paid, you will not be eligible for a new Partial Disability Benefit Period for Disability due to an unrelated cause, until 14 working days after you: (1) have been released by a Physician from a prior Disability, (2) are no longer disabled, and (3) are no longer qualified to receive any Disability benefits under this policy.

Periods of Disability meeting either of these separation requirements will begin a new Partial Disability Benefit Period (a maximum period of three months), subject to a new Elimination Period.

The Partial Disability Benefit Period is not subject to the Total Disability Benefit Period.

C. **WAIVER OF PREMIUM BENEFIT:** If your covered Sickness or covered Off-the-Job Injury causes your Total Disability or Partial Disability for more than 90 consecutive days (or after the Elimination Period shown in the Policy Schedule, whichever is greater) while this policy is in force, Aflac will waive, from month to month, the premium for the policy and any applicable rider(s) for as long as you remain disabled, up to the applicable Benefit Period shown in the Policy Schedule.

For premiums to be waived, Aflac will require an employer's statement (or proof of your inability to perform three or more ADLs) and a Physician's statement certifying your inability to perform said duties or activities, and may each month thereafter require a Physician's statement that your inability to perform said duties or activities continues. Aflac may ask for and use an independent consultant to determine your Disability when this benefit is in force.

You must pay all premiums to keep the policy and any applicable rider(s) in force until Aflac approves your claim for this Waiver of Premium Benefit. You must also resume premium payment to keep the policy and any applicable rider(s) in force, beginning with the first premium due after you no longer qualify for Disability benefits.

**IF YOU HAVE ANY OTHER DISABILITY BENEFIT IN FORCE WITH US, ONLY ONE DISABILITY BENEFIT IS PAYABLE.**

### AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS (AFLAC)
**Worldwide Headquarters: Columbus, Georgia 31999**
A Stock Company

## ENDORSEMENT

This endorsement is subject to all of the provisions of the policy to which it is attached.

### Part 1
### EFFECTIVE DATE

The Effective Date of this endorsement is the Effective Date of your policy, as shown in your Policy Schedule.

### Part 2
### BENEFITS

Your policy is hereby amended by adding the following **Payroll Deduction Continuation of Coverage Benefit.** "Payroll deduction" means your premium is remitted to AFLAC for you by your employer through a payroll deduction process.

### CONTINUATION OF COVERAGE BENEFIT

If you leave your employer for any reason after your policy has been in force for six months and we have received premiums for six consecutive months through payroll deduction, we will waive all monthly premiums due for the policy and riders, if any, up to the date your premium payments are re-established. You or your employer must notify us in writing within 30 days of the date your premium payments cease due to your leaving employment. For you to take advantage of this benefit, you must re-establish premium payments within two months of the date you left your employer who was remitting your premiums. You can re-establish your premium payments through: (1) your new employer's payroll deduction process; or (2) direct payment to AFLAC .

This benefit will again become available once you have re-established your premium payments through an employer's payroll deduction process for a period of six months and we have received premiums for six consecutive months.

### Part 3
### TERMINATION

This benefit endorsement will automatically terminate with the policy.

In witness whereof, AFLAC causes this endorsement to be signed by its president and secretary in the city of Columbus, Georgia.

Teresa White, President

J. Matthew Loudermilk, Secretary

Form A-58555

A58555.1

**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS**
**(herein referred to as Aflac)**
Worldwide Headquarters • Columbus, Georgia  31999
A Stock Company
**Endorsement**

# NOTICE OF NON-INSURANCE BENEFITS

This Notice is added to and made a part of the policy to which it is attached.

From time to time Aflac may in its discretion offer or provide some persons who apply for coverage with Aflac or become insureds/enrollees with Aflac with goods and/or services such as, but not limited to Enrollment, Educational, Benefit Statement, and payroll or plan administration services under the same benefit plan that includes the Aflac coverage or that is related to the Aflac coverage, and individual Wellness Programs and Related Services. In addition, Aflac may arrange for third party service providers (such as pharmacies, optometrists, dentists, and accountants), to provide discounted goods and services to those persons who apply for coverage with Aflac or who become insureds/enrollees of Aflac. While Aflac has arranged these goods, services and/or third party provider discounts, the third party service providers are liable to the applicants/insureds/enrollees for the provision of such goods and/or services. Aflac is not responsible for the provision of such goods and/or services nor is it liable for the failure of the provision of the same. Further, Aflac is not liable to the applicants/insureds/enrollees for the negligent provision of such goods and/or services by third party service providers.


Teresa White, President

J. Matthew Loudermilk, Secretary


Form A91320

A91320.1