UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JODY FEES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0476-CVE-JFJ |
| | ) | |
| AMERICAN FAMILY LIFE INSURANCE | ) | |
| COMPANY OF COLUMBUS ("AFLAC"), | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is defendant American Family Life Insurance Company of Columbus's (Aflac's) motion for summary judgment (Dkt. # 19). On February 2, 2015, Aflac issued an short-term disability insurance policy to plaintiff Jody Fees. Plaintiff submitted a claim for disability benefits on December 15, 2017, alleging total disability due to a knee surgery stemming from an off-the-job injury in August 2016, when he was employed full time. Plaintiff sued Aflac for breach of contract for denying disability coverage, and for breach of the duty of good faith and fair dealing (bad faith). Dkt. # 2-2. On January 16, 2020, Aflac filed a motion for summary judgment. Dkt. # 19. Plaintiff has filed a response (Dkt. # 41), and Aflac has filed a reply (Dkt. # 42).

**I.**

The following are the undisputed facts: Effective February 2, 2015, Aflac issued an individual policy of short-term disability insurance, No. POH4W5R7 (Policy), to plaintiff. Dkt. ## 19, at 7; 41, at 7. Plaintiff applied for the Policy while he was employed by York Plumbing, Inc. (York) on January 27, 2015. Dkt. ## 19, at 9; 41, at 7. Plaintiff was insured under the Policy from February 2, 2015 to April 8, 2018. Dkt. ## 41, at 11; 42, at 9. The Policy provided a monthly

disability benefit of $2,500 for a maximum of six months in the event of total disability due to an injury or sickness, and three months for a partial disability following a fourteen day elimination period. Dkt. ## 19, at 7; 41, at 7. Plaintiff alleges that he is owed benefits due to his total disability from December 5, 2017, to April 7, 2018. Id. The amount of coverage in dispute is $9,166.30, although plaintiff claims damages in excess of $75,000. Id.

The Policy defines "Total Disability" as "being under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, and not working at any job." Dkt. ## 41, at 16; 42, at 9. The Policy defines Off-the-Job Injury as "an Injury that occurs while you are not working at any job for pay or benefits." Dkt. # 19-1, at 8. The Policy provides benefits as follows:

> **A. TOTAL DISABILITY BENEFITS**
> **1. Working Full Time:** If you have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:
>
> If your covered Sickness or covered Off-the-Job Injury causes your Total Disability within 90 days of your last treatment for your covered Sickness or covered Off-the-Job Injury, we will pay you the Daily Disability Benefit for each day of your Total Disability. This benefit is payable up to the Total Disability Benefit Period you selected and is subject to the Elimination Period shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."
>
> You will no longer be qualified to receive this benefit upon the earlier of your: (1) being released by your Physician to perform the material and substantial duties of your Full-Time Job, or (2) working at any job.
>
> **2. Not Working Full Time:** If you do not have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:
>
> If you are unable to perform three or more ADLs within 90 days of your last treatment that is a result of a covered Sickness or Off-the-Job Injury, as

> certified by a Physician, and you require Direct Personal Assistance to perform such ADLs, we will pay you the Daily Disability Benefit for each day you cannot perform such ADLs. This benefit is payable up to the Total Disability Benefit Period you selected and is subject to the Elimination Period shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."

Id. at 12-13. The Policy defines Activities of Daily Living (ADLs) as "activities used in measuring your level of personal functioning capacity. Normally, these activities are performed without Direct Personal Assistance, allowing you personal independence in everyday living." Dkt. ## 19, at 9; 41, at 7. These ADLs, per the terms of the Policy, are:

1. Bathing: washing oneself by sponge bath or in either a tub or shower, including the task of getting into or out of the tub or shower;

2. Maintaining continence: controlling urination and bowel movements, including your ability to use ostomy supplies or other devices such as catheters;

3. Transferring: moving between a bed and a chair, or a bed and a wheelchair;

4. Dressing: putting on and taking off all necessary items of clothing;

5. Toileting: getting to and from a toilet, getting on and off a toilet, and performing associated personal hygiene; and

6. Eating: performing all major tasks of getting food into your body.

Dkt. # 19-1, at 7.

On or about August 21, 2016, plaintiff twisted his left knee while not working at his job as he was walking down a boat ramp. Dkt. ## 41, at 11; 42, at 9. On that date, plaintiff was employed full-time as a plumber with Forrest Shoemaker AC, Inc. (Forrest Shoemaker). Id. Plaintiff's employment with Forrest Shoemaker terminated on September 22, 2017. Dkt. ## 19, at 9; 41, at 7. Plaintiff was not working at his job at the time of his injury. Dkt. ## 41, at 11; 42, at 9. Plaintiff immediately sought medical care for the injury to his knee from Kevin Dukes, M.D., of Tulsa Bone

and Joint, who determined that plaintiff's injury did not require surgical intervention at that time, but noted, "[i]f he starts having mechanical symptoms, I would like to see him back," and that he "would be happy to proceed with surgical arthroscopy" in the event of recurrent pain or new mechanical symptoms.  Dkt. ## 41, at 12; 42, at 9.

On December 5, 2017, plaintiff underwent left knee arthroscopic surgery to repair a lateral meniscal tear.  Dkt. ## 19, at 10; 41, at 7.  After the surgery, Dr. Dukes directed plaintiff not to work until April 5, 2018, and to refrain from all activities involving lifting, pushing/pulling, kneeling, squatting, climbing, and stooping, as well as prolonged periods of standing and/or walking.  Dkt. ## 41, at 12; 42, at 9.  These restrictions prohibited plaintiff from performing the essential duties of a plumber.  Id.

On or about December 15, 2017, plaintiff filed a claim for short-term disability benefits under the Policy, through Aflac agent Corey MacIntyre.  Id.  In support of his claim, plaintiff submitted an Initial Disability Claim Form – Physician's Statement (Statement), dated December 7, 2017, from Dr. Dukes.  Id.  Dr. Dukes' Statement stated that plaintiff's first date of disability was December 5, 2017.  Id.  The Statement form asked Dr. Dukes "[i]f patient is not employed or employed less than 30 hours, which [ADLs] is the patient unable to perform?"  Dkt. ## 19, at 10; 41, at 8.  Plaintiff alleges that Dr. Dukes had no foundational knowledge regarding plaintiff's employment status.  Dkt. # 41, at 8.  The Statement form directed Dr. Dukes to "Check and Initial all that apply."  Dkt. ## 19, at 10; 41, at 8.  Dr. Dukes checked only a single ADL.  Id.  He marked, "transferring," and wrote, "patient may need help with transferring and getting to and from appts."  Id.  On December 18, 2017, plaintiff told Dr. Dukes that he was "doing well and has no complaints other than a few mildly tender spots on his knee."  Dkt. ## 41, at 11; 19, at 8.  However, plaintiff points out that Dr. Dukes

4

consistently noted that plaintiff would be unable to return to work until April 2018 and produced a detailed statement of plaintiff's capabilities on January 8, 2018, prohibiting him from lifting anything, pushing/pulling anything, as well as squatting, kneeling, climbing, and stooping. Dkt. # 41, at 8.

On December 19, 2017, Aflac sent plaintiff a letter seeking completion of an Employer Statement. Dkt. # 41, at12; 42, at 9. On December 29, 2017, MacIntyre told plaintiff that Aflac needed "office visit notes from your doc for what caused the disability and a separate letter stating you cannot perform 3 [ADLs]." Id. No reference was made to an Employer Statement. Id. On January 18, 2018, MacIntyre told plaintiff that he "spoke to a rep at [Aflac] headquarters and they said they actually need two years of tax returns," and that "[w]e already submitted 2016." Dkt. ## 41, at 13; 42, at 9. Plaintiff provided his 2015 income tax return to MacIntyre who submitted them to Aflac on January 22, 2018. Dkt. # 19-1, at 100-02. On January 30, 2018, MacIntyre notified plaintiff that Aflac required a completed Employer Statement. Id. MacIntyre sent the Employer Statement directly to Forrest Shoemaker, plaintiff's former employer, on February 1, 2018. Id. MacIntyre received the completed form and submitted that form to Aflac on February 9, 2018. Id. MacIntyre told plaintiff on February 16, 2018, that his submission of the Employer Statement triggered the opening of an entirely new claim, and he apologized for the lengthy claims handling process. Id. That same day, Aflac mailed plaintiff a letter demanding that he submit another Physician's Statement. Id. Aflac had received completed copies of this form with substantiating documentation on December 17, 2017, January 2, 2018, January 10, 2018, and January 17, 2018. Id.

On February 20, 2018, Aflac denied plaintiff's short-term disability claim because his disability purportedly lasted less than the Policy's 14-day Elimination Period. Id. On February 23, 2018, Dr. Dukes submitted a second Physician's Statement with supporting documents. Dkt. ## 41, at 14; 42, at 9. Plaintiff contacted Aflac on March 5, 2018, to check the status of his claim, and was notified that Aflac purportedly needed additional information related to ADLs. Id. Plaintiff submitted an executed Health Insurance Portability and Accountability Act (HIPAA) release to Aflac on April 2, 2018. Id. On March 30, 2018, Bethany Koss, M.P.T., of Tulsa Bone and Joint, discharged plaintiff from physical therapy because he had not attended physical therapy in "over 2 months." Dkt. ## 19, at 12; 41, at 9. Dr. Dukes sent Aflac a letter dated April 30, 2018, stating that, from December 5, 2017 to April 4, 2018, plaintiff needed assistance with transportation and maintaining household duties. Id. On June 18, 2018, Aflac again notified plaintiff that his short-term disability claim had been denied because his disability did not extend past the Policy's Elimination Period, and attached a copy of Aflac's February denial letter. Dkt. ## 41, at 15; 42, at 9. Approximately one month later, MacIntyre submitted another letter from Dr. Dukes to Aflac to substantiate plaintiff's four month long disability. Id.

Over the next several months, Aflac provided plaintiff no additional updates of plaintiff's short-term disability claim, and he enlisted the services of attorney Mark Heidenreiter. Id. Plaintiff, through Heidenreiter, appealed Aflac's determination that no benefits were payable, via letter dated October 28, 2018. Dkt. ## 19, at 12; 41, at 7. In support of his appeal, plaintiff provided a note from Dr. Dukes dated September 26, 2018, stating that plaintiff could not work as a plumber between December 5, 2017 and April 8, 2018. Id. On November 9, 2018, Aflac notified plaintiff that his employment status at the time of his disability was in question. Dkt. ## 41, at 15; 42, at 9.

Heidenreiter responded to Aflac on November 18, 2018. Id. He noted Aflac's refusal to pay, duplicative document requests, and shifting claims positions were potentially violative of the duty of good faith and fair dealing. Id. On December 14, 2018, Aflac notified Heidenreiter that the Policy provided "benefits if, while you are employed at a Full-Time Job, you are totally or partially disabled due to a covered Sickness or covered Off-the-Job Injury." Dkt. ## 41, at 16; 42, at 9. Heidenreiter again sent a letter dated January 21, 2019, claiming that plaintiff was employed full-time at the time of his disability (December 5, 2017) as he had started his own plumbing company. Dkt. ## 19, at 13; 41, at 7. As alleged proof of employment at the time of his disability, plaintiff submitted a Certificate of Limited Liability Company for a company called "J&L Plumbing, LLC." Id.

The following are the disputed allegedly material facts: Aflac alleges that the Policy places the burden of proof on plaintiff. Dkt. ## 19, at 9; 41, at 8. Plaintiff alleges that his employment with York was not terminated in the summer of 2016. Dkt. # 41, at 8. Plaintiff alleges that he was employed at the time of his December 5, 2017, surgery, because he was self-employed as the owner of J&L Plumbing, LLC. Id. Plaintiff alleges that he cooperated fully with Aflac. Id. Plaintiff alleges that, for the duration of his claim, he was in direct contact with MacIntyre, who allegedly spoke to plaintiff with the voice of Aflac. Id. at 8-9. Plaintiff alleges that it was not until January 30, 2018, that MacIntyre notified him that Aflac was requiring the submission of an Employer's Statement. Id. at 9. Plaintiff alleges that MacIntyre apologized to him because "the rep [he] spoke to last week did not mention any of this" previously. Id. Plaintiff alleges that it was MacIntyre that later provided the Employer's Statement to Forrest Shoemaker, and later returned the form to Aflac. Id. Plaintiff alleges that there is no evidence that Aflac sought additional information from Dr.

Dukes in an attempt to ensure the accuracy of its claim decision. Id. Plaintiff alleges that Aflac had already received extensive documentation from Dr. Dukes on December 7, 2017, January 9, 2018, January 10, 2018, January 17, 2018, February 9, 2018, February 23, 2018, and February 26, 2018. Id. Plaintiff alleges that, on February 20, 2018, Aflac denied plaintiff's claim because it believed he was disabled for less than fifteen days. Id. Plaintiff alleges that this denial was reconfirmed on June 18, 2018. Id. at 9-10. Plaintiff alleges that there was no mention made of an alleged failure to prove disability. Id. at 10.

Aflac alleges that there is no evidence that plaintiff underwent a Magnetic Resonance Imaging (MRI) on August 30, 2017. Dkt. ## 41, at 12; 42, at 9. Aflac alleges that it consistently and clearly notified plaintiff that he had failed to submit the necessary documentation to meet his burden of proving entitlement to short-term disability benefits. Dkt. # 42, at 9. Aflac alleges that it consistently and clearly notified plaintiff that he had failed to submit the necessary documentation to meet his burden of proving entitlement to short-term disability benefits. Id. Aflac alleges that plaintiff did not provide the documentation that MacIntyre specifically asked for. Id. Aflac alleges that it did not open new claims. Id. Aflac alleges that the numbers labeled as claim numbers in the short-term disability file do not represent separate claims, but, rather, separate actions. Id. Aflac alleges that plaintiff's counsel acknowledged this in a March 10, 2020, email. Id.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

### Breach of Contract

Plaintiff argues that Aflac breached the Policy by not paying him short-term disability benefits. Dkt. # 41, at 17. Plaintiff first argues that the August 21, 2016 injury was the date of his

Off-the-Job Injury. Id. at 19.  Plaintiff points out that he was then under the care of Dr. Dukes until his surgical intervention on December 5, 2017.  Id.  Therefore, plaintiff argues that he qualified for benefits under the "Working Full Time" section of the Policy.  Aflac argues that, even assuming the August 2016 injury was the qualifying Off-the-Job injury, plaintiff was not treated within ninety-days of that injury as the Policy requires.  Dkt. # 42, at 7.  Aflac argues that plaintiff was not working full time at the time of his "disabling injury," which, Aflac argues, is the December 5, 2017 surgery. Dkt. # 19, at 18.  Aflac also argued that plaintiff did not qualify for "Not Working Full Time" benefits because he was unable to perform only one ADL, when he was required to be unable to perform at least three ADLs.  Id. at 19.

Under Oklahoma law, "[i]nsurance policies are contracts and they should be construed as every other contract—according to its terms where it is not ambiguous." Equity Ins. Co. v. City of Jenks, 184 P.3d 541, 544 (Okla. 2008).  To recover for breach of contract, a plaintiff must establish: "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach." Cates v. Integris Health, Inc., 412 P.3d 98, 103 (Okla. 2018).

There is no issue that an insurance contract was formed.  The Court finds that the terms of the Policy are unambiguous.  The relevant terms of the Policy provide benefits as follows:

> **A. TOTAL DISABILITY BENEFITS**
> **1. Working Full Time:** If you have a Full-Time Job at the time of your Sickness or Off-the-Job Injury, we will insure you as follows while coverage is in force:
>
> If your covered Sickness or covered Off-the-Job Injury causes your Total Disability within 90 days of your last treatment for your covered Sickness or covered Off-the-Job Injury, we will pay you the Daily Disability Benefit for each day of your Total Disability.  This benefit is payable up to the Total Disability Benefit Period you selected and is subject to the Elimination Period

> shown in the Policy Schedule. Also see the Uniform Provision titled "Term," and the definition of "Benefit Period."
>
> You will no longer be qualified to receive this benefit upon the earlier of your: (1) being released by your Physician to perform the material and substantial duties of your Full-Time Job, or (2) working at any job.

Id. at 12-13 (emphasis added).

Applying the plain language of the Policy, plaintiff injured his knee while not at work on August 21, 2016. Dkt. # 19-1, at 138. It follows, then, that this injury was an Off-the-Job Injury. The Policy defines Off-the-Job Injury as "an Injury that occurs while you are not working at any job for pay or benefits." Dkt. # 19-1, at 8. Plaintiff had a full-time job with Forrest Shoemaker at the time of his Off-the-Job Injury. Dkt. ## 41, at 11; 42, at 9. However, plaintiff was not at work at the time of his August 21, 2016, injury, see Dkt. # 41-2, at 1; therefore, his injury was an Off-the-Job Injury.

This Off-the-Job Injury also caused plaintiff's Total Disability. The Policy defines "Total Disability" as "being under the care and attendance of a Physician due to a condition that causes you to be unable to perform the material and substantial duties of your Full-Time Job, and not working at any job." Dkt. ## 41, at 16; 42, at 9. First, plaintiff was under the care and attendance of a physician. After plaintiff's Off-the-Job Injury, he immediately sought medical care from Dr. Dukes, who determined that plaintiff's injury did not require surgical intervention, but noted "[i]f he starts having mechanical symptoms, I would like to see him back," and that he "would be happy to proceed with surgical arthroscopy" in the event of recurrent pain or new mechanical symptoms. Dkt. ## 41, at 12; 42, at 9. Plaintiff returned to Dr. Dukes on August 23, 2017, to address "pain particularly with squatting and crouching type activities." Dkt. # 19-1, at 140. The progress notes from that visit state

11

that plaintiff "has had some ongoing pain for over a year now," presumably from the August 21, 2016, injury. Id. Second, plaintiff's condition caused him to be unable to work. After plaintiff's final treatment—the December 5, 2017 surgery—for his Off-the-Job Injury—the August 21, 2016 twisting of the knee on a boat ramp—Dr. Dukes directed plaintiff not to work until April 5, 2018, and to refrain from all activities involving lifting, pushing/pulling, kneeling, squatting, climbing, and stooping, as well as prolonged periods of standing and/or walking. Id. at 36, 73. Therefore, plaintiff was totally disabled after the December 5, 2017, knee surgery.

Finally, plaintiff was totally disabled within ninety days of his last treatment. Aflac argues that the last treatment was plaintiff's August 23, 2017, visit to Dr. Dukes. However, it was plaintiff's December 5, 2017, surgery that was his last treatment before his total disability. This is because the Court finds from the undisputed facts that the December 5, 2017, surgery was the result of plaintiff's August 21, 2016, Off-the-Job Injury. In addition, the record shows that plaintiff had a "lateral meniscus tear" as early as September 12, 2016, presumably due to the August 21, 2016, injury. Id. at 55. Further, the record shows that the December 5, 2017, surgery was "treatment." Id. at 39. The Court finds that the surgery was not an injury; it was surgical treatment (repair) of the damage caused by the Off-the-Job Injury.

Because plaintiff met all of the pre-requisites for short-term disability benefits under the Policy, Aflac is not entitled to summary judgment on the breach of contract claim and the motion is denied as to that claim.[1]

---

[1] The Court need not reach Aflac's argument that plaintiff was not working full time at the time of his injury/disability (which it argues was the surgery) and that he did not qualify for "Not Working Full Time" benefits due to his inability to perform only one ADL, because, under the plain terms of the Policy, the Court finds from the undisputed facts that plaintiff's Off-the-Job Injury was the August 21, 2016 injury, when he was working full time.

B.

**Bad Faith**

As to count two, plaintiff argues that Aflac failed to properly investigate his short-term disability claim. Dkt. # 41, at 22. Plaintiff also argues that Aflac failed to adequately train or supervise its employees. Id. at 24. Plaintiff argues that Aflac shifted its rationale for denying benefits, which, plaintiff argues, is unreasonable. Id. at 26. Aflac argues that it properly denied coverage under the Policy and that, therefore, plaintiff allegedly has no bad faith claim. Dkt. # 19, at 20. Aflac also argues that it had a reasonable basis for denying benefits because plaintiff never provided evidence to prove he was working full-time at the time of his "disabling injury." Id. Aflac argues that it went out of its way to repeatedly request information that could have led to payment of benefits, but that it was plaintiff who refused to provide the dispositive employment evidence. Id. at 20-21. Finally, Aflac argues that the cause of plaintiff's injury—the lack of benefits—had nothing to do with Aflac and everything to do with plaintiff. Id. at 21. Aflac argues that, had plaintiff or his attorney provided the proof requested of full-time employment, there would have been no financial injury. Id.

"Under Oklahoma law, an insurer has an implied duty to act in good faith and deal fairly with its insured." Porter v. Farmer Ins. Co., Inc., 505 Fed. App'x 787, 791 (10th Cir. 2012) (unpublished).[2] "Violation of this duty gives rise to an action in tort." Id. "The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for

---

2   Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." Ball v. Wilshire Ins. Co., 221 P.3d 717, 724 (Okla. 2009). "The absence of any one of these elements defeats a bad faith claim." Id.

As discussed, plaintiff met all of the pre-requisites for short-term disability benefits under the Policy. However, there is a fact issue as to whether Aflac was in possession of the information that plaintiff's August 21, 2016, injury was the Off-the-Job Injury and whether it failed to investigate that injury. If Aflac was in possession of this information, then it had no reasonable basis for delaying payment and did not deal fairly and in good faith with plaintiff. Further, its violation of the duty of good faith and fair dealing would be the direct cause of plaintiff's injury—loss of short-term disability benefits.

To overcome a motion for summary judgment premised on inadequate investigation, plaintiff "must have made a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." Bannister v. State Farm Mut. Auto. Ins. Co., 692 F.3d 1117, 1131 (10th Cir. 2012) (quotation marks omitted). The Court must examine the materials in Aflac's possession at the time it denied plaintiff's claim and all of the correspondence between Aflac and plaintiff in order to analyze plaintiff's failure to investigate argument.

There were two denial letters: an initial denial letter that states only that the period of disability was less than fifteen days, and an appeal denial letter that states that plaintiff was not working full-time at the time of his injury and he did not have proof of inability to perform at least three ADLs. Additional correspondence occurred over the course of over a year. The first correspondence in the record is dated January 23, 2018, in which Aflac communicated that it needed

an Employer Statement from plaintiff. Dkt. # 19-1, at 109. The second correspondence is dated February 16, 2018, in which Aflac stated that it needed an Attending Physician's Statement. Id. at 130. It then denied benefits on February 20, 2018, because the "period of disability was less than 15 days." Id. at 222. After plaintiff's appeal, the next correspondence from Aflac is dated April 3, 2018, in which Aflac asked for "supporting medical records that [sic] contains the activities of daily living requirements." Id. at 177. Aflac then requested the ADLs directly from Dr. Dukes. Id. at 189. The next correspondence is dated May 8, 2018, when Aflac asked Dr. Dukes for a copy of plaintiff's medical documentation beginning from "treatment date December 5, 2017 through April 5, 2018 . . . ." Id. at 197. Aflac then sent the same correspondence to "medical records." Id. at 200. Heidenreiter then sent Aflac a letter demanding payment for plaintiff's short-term disability, and allegedly attached the documentation Aflac requested. Id. at 254. Aflac then sent plaintiff a letter acknowledging its receipt of Heidenreiter's letter, and acknowledging that plaintiff's request for short-term disability benefits was "due to lateral meniscus tear . . . ." Id. at 464. That letter went on to deny benefits because plaintiff was not unable to perform three or more ADLs. Id. Heidenreiter then sent Aflac a letter detailing plaintiff's treatment and disability, and claiming bad faith for "changing the requirement of documents to be provided and . . . changing the stated terms of the [P]olicy." Id. at 466. On December 14, 2018, Aflac sent Heidenreiter a letter stating that plaintiff was denied benefits because he was not unable to perform at least three ADLs. Id. at 469. Heidenreiter responded to this letter on January 21, 2019, stating that plaintiff was employed full time prior to the surgery, he had a Sickness or Off-the-Job Injury, he had the same surgery approximately two years prior, he paid premiums, and Aflac changed its reasoning for denying benefits in "every letter." Id. at 450-51. On March 29, 2019, Aflac sent plaintiff a letter asking for

information related to his full-time employment. Id. at 459-60. Aflac again asked for this information on April 17, 2019. Id. at 461. Finally, on May 17, 2019, Aflac sent plaintiff a letter informing him that benefits were denied because he did not prove that he was working full time at the time of his December 5, 2017, surgery, and because he did not prove that he was unable to perform at least three ADLs. Id. at 462-63.

The only letter that refers to an Off-the-Job injury is Heidenreiter's January 21, 2019, letter. No correspondence from Aflac mentions an injury prior to the December 5, 2017 surgery. Therefore, Aflac does not appear to have investigated plaintiff's August 21, 2016, injury. The question at issue, then, is whether Aflac should have investigated the August 21, 2016, injury. Plaintiff's initial disability claim form does not refer to an August 21, 2016, injury, although there is nothing in the form specifically asking if the disability resulted from an Off the Job Injury. See Dkt. # 19-1, at 44-45. The Initial Disability Claim Form – Physician's Statement does, however, state that plaintiff was last treated for his December 5, 2017, disability on August 27, 2017, when he was working for Forrest Shoemaker. Id. at 36. Another Physician's Statement states that plaintiff's symptoms first occurred on January 17, 2015. Id. at 34. Finally, plaintiff's medical history, which was in the possession of Aflac when it denied short-term disability benefits, states that he had a "lateral meniscus tear, left, initial encounter" on September 12, 2016, well before the December 5, 2017, surgery. Id. at 55. Thus, it is arguable that Aflac should have investigated to determine if there was a qualifying injury before the December 5, 2017, surgery, even if neither plaintiff nor Heidenreiter specifically informed Aflac of the injury. See Pitts v. Western American Ins. Co., 212 P.3d 1237, 1240 (Okla. Civ. App. 2009) ("The primary question in a bad faith claim for failure to investigate . . . is: what did the insurance company know, or what should it have known at the time the insured

requested payment under the applicable policy, i.e., whether the insurer had a justifiable, reasonable basis to withhold payment when the insured requested the carrier to perform its contractual obligation.") (quotation marks omitted) (emphasis added). However, this is a question for the fact-finder, and is not appropriate for summary judgment. For these reasons, the Court finds that Aflac's motion for summary judgment as to bad faith should be denied.

## C.

### Punitive Damages

Aflac argues that plaintiff is not entitled to punitive damages. Dkt. # 19, at 22. Aflac first argues that plaintiff is not entitled to punitive damages on his breach of contract claim. Id. Second, Aflac argues that plaintiff cannot recover punitive damages for bad faith because that claim, Aflac argues, fails. Id. Finally, Aflac argues that there is no reckless disregard, malice, or intentional wrongdoing. Id.

Punitive damages may be awarded only if the plaintiff shows by clear and convincing evidence that the defendant has been "guilty of reckless disregard for the rights of others." OKLA. STAT. tit. 23, § 9.1; Rodebush by and through Rodebush v. Oklahoma Nursing Homes, Ltd., 867 P.2d 1241, 1251 (Okla. 1993). A person acts in reckless disregard for the rights of others if he "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." Gowens v. Barstow, 364 P.3d 644, 652 (Okla. 2015). The trial court must determine as a matter of law whether the plaintiff has produced sufficient evidence that a reasonable jury could find that a defendant acted with reckless disregard before instructing the jury as to punitive damages. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1106 (Okla. 2005).

"Punitive damages are those damages which are given because of the wanton, reckless, malicious, or oppressive character of the acts of the defendant." Wagoner v. Bennett, 814 P.2d 476, 478 (Okla. 1991); Hamilton v. Amwar Petroleum Co., Inc., 769 P.2d 146, 149 (Okla. 1989); Slocum v. Phillips Petroleum Co., 678 P.2d 716, 719 (Okla. 1983). "They are meant to punish the wrongdoers and to act as a deterrent to others." Wagoner, 814 P.2d at 478. As the Oklahoma Supreme Court has explained:

> The intent in willful and wanton misconduct is not an intent to cause the injury; it is an intent to do an act—or the failure to do an act—in reckless disregard of the consequences and under such circumstances that a reasonable man would know, or have reason to know, that such conduct would be likely to result in substantial harm to another.

Graham v. Keuchel, 847 P.2d 342, 362 (Okla. 1993).

As an initial matter, plaintiff cannot recover punitive damages for his breach of contract claim. See Cimarex Energy Co. v. Calhoon, 2012 WL 1371386, at *5 (W.D. Okla. Apr. 19, 2012) ("Punitive damages are not recoverable for a breach of contract."); OKLA. STAT. tit. 23, § 9.1 ("In an action for the breach of an obligation not arising from contract, the jury . . . may . . . award punitive damages . . . .") (emphasis added). However, because there is a fact issue as to whether Aflac acted in bad faith when it denied plaintiff short-term disability benefits, a fact-finder could still find that Aflac acted with the requisite reckless disregard of plaintiff's rights to warrant punitive damages. Further, punitive damages may be sought for an insurer's breach of the duty of good faith, and the Court has not granted Aflac's motion for summary judgment as to bad faith. See Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1106 (Okla. 2005). The Court finds that Aflac's motion for summary judgment as to punitive damages should be denied.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 19) is **denied**.

**DATED** this 5th day of June, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE