## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JODY FEES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-476-CVE-JFJ |
| | ) | |
| AFLAC | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S FIRST MOTION TO COMPEL

Comes now Plaintiff Jody Fees and moves this Court to Compel Discovery from Defendant AFLAC.  Plaintiff asks the Court to compel AFLAC to produce copies of a "legal review" that was relied upon by AFLAC's claims handlers in evaluating the insurance claim upon which this action is based.  Further, Plaintiff asks that the Court compel AFLAC to produce any and all communications related to the "legal review," unredacted portions of AFLAC's claim file in which the "legal review" is referenced, and grant Plaintiff leave of Court to conduct additional depositions of any individual responsible for conducting the "legal review" or any employee who relied upon the same in processing Plaintiff's claim.

As will be set forth below, testimony from AFLAC's Corporate Representative proves that the "legal review" to which Plaintiff's claim was subjected was conducted in the normal course of AFLAC's claims handling function and is not subject to attorney-client or work-product protection.  Further, the information sought is highly relevant to the issues before the Court and should have been identified and produced long ago.

I.      **LCvR 37.1 Compliance Statement.**

The undersigned represents that he has complied with LCvR 37.1 in that he has contacted AFLAC's counsel, Kristina Holmstrom via telephone[1] and attempted in good faith to resolve the issues set forth in this motion.  Counsel were unable to resolve the issues set forth in said motion after a sincere attempt to do so.

II.     **Requested Discovery.**

On October 1, 2019, AFLAC produced 474 pages of documents bearing Bates Stamps AFLACJFCL000001 - 474.  AFLAC claimed these documents represented the whole of its claim file.  Pages 457-459, and 464 were partially redacted.  *See* Ex. 1 - Redacted Claim File Excerpt. Contemporaneously with the production of its claim file, AFLAC also produced a *Privilege Log* indicating the redacted portions of the claim file were protected by work-product privilege.  No attorney-client privilege was alleged to have existed at that time.  *See* Ex. 2 - Privilege Log.

On December 30, 2019, Plaintiff issued *Plaintiff Jody Fee's First Set of Discovery to Defendant AFLAC* ("Plaintiff's Discovery").  Defendant responded to *Plaintiff's Discovery* on February 24, 2020.  *See* Ex. 3 - *Defendant's Responses to Jody Fee's First Set of Discovery to Defendant AFLAC* ("AFLAC's Response").  Because AFLAC's Response contained objections to all of Plaintiff's requests and provided no additional information, Plaintiff sought an informal discovery conference as required by LCvR 37.1.  Plaintiff's counsel identified AFLAC's discovery deficiencies by email.  *See* Ex. 4 - 2/28/20 Email from Rowe.  Specifically, Plaintiff's counsel inquired about the existence of "legal opinions" related to the handling of Mr. Fees' claim:

---

[1]  A telephonic conference is authorized under LCvR 37.1 as the offices of counsel are separated by more than 30 miles and a personal conference would be infeasible.  Ms. Holmstrom's office is located in Phoenix, Arizona and the undersigned is located in Oklahoma City, Oklahoma.

"Request for Production 7"

At issue in this matter is AFLAC's misapplication of the plain language of Mr. Fees disability policy.  Any legal opinions bearing on the same or specifically on Mr. Fees claim should be disclosed at once.  Again, if these documents exist and you believe them to be privileged, please produce a detailed privilege log."

*Id.*

A Rule 37 conference was conducted on March 9, 2020 and Plaintiff's counsel was notified that no attorneys were involved in the handling of Mr. Fees' claim and that no legal opinion existed.  Plaintiff's counsel memorialized this representation from AFLAC in an email the next day.  *See* Ex.5 - 3/10/20 Email from Rowe ("RFP 7 - There were no legal opinions.").

On March 27, 2020, AFLAC provided Plaintiff *Defendant's Supplemental Responses to Jody Fee's First Set of Discovery to Defendant AFLAC* ("Supplemental Response") attached hereto as Ex. 6.

At issue in this motion are the following Interrogatories and Requests for Production that bear on the issue of AFLAC's unidentified and unproduced "legal review," *AFLAC's Responses*, and where applicable, *AFLAC's Supplemental Responses*:

**INTERROGATORY NO. 2:**  Identify all persons, including adjusters, claims representatives, supervisors, etc. who have been assigned to and/or participated in any way in the evaluation, investigation, or handling and/or decision-making regarding Plaintiff Jody Fee's claim, Claim Number 003729114, that is the subject of this lawsuit and for each state:

(a)     His/her job title and employee identification number;
(b)     Which team he or she works on;
(c)     A description of the work performed by each and the date it was performed;
(d)     If the file was transferred to others, please state the reason for the transfer; and
(e)     If said person is no longer an employee of your company, provide the last known address and place of employment.

**RESPONSE NO. 2:**  Defendant objects to Request No 2 on the grounds that it is overbroad, irrelevant to Plaintiff's claims and Defendant's defenses, and that the burden associated with providing a response as requested would not be proportional to the needs of this case.  Defendant further objects to Request No. 2 on the grounds that it seeks private or confidential information about individuals who are not parties to this action.  Subject to and without waiving these objections, AFLAC states that it has already produced all discoverable, non-privileged information in its possession to Plaintiff. Specifically, the claim file contains all non-privileged documents received and generated in the course of handling Plaintiff's claim.

**[SUPPLEMENTAL] RESPONSE NO. 2:**  Defendant objects to Interrogatory No. 2 on the grounds set forth in the General Objections above and on the grounds that it seeks private or confidential personal information about individuals who are not parties to this action. Subject to and without waiving said objection, Aflac states that all individuals who worked on or communicated about Plaintiff's claim have already been identified in the claim file produced to Plaintiff's counsel on October 1, 2019 and December 4, 2019, labeled as AFLACJFCL000001-481. By way of further response, and without waiving said objections, Aflac has identified the following individuals as identified in the claim file, all of whom work at Aflac Worldwide Headquarters located at 1932 Wynnton Road, Columbus, GA 31999:

> E07806 Sherri Irions - Claims Appeals Coordinator
> E10395 Nicole Skinner - Claims Appeals Coordinator
> E12001 and SM (461) Shawnice Moore - Claims Appeals Coordinator
> E10265 Shanna O'Hara – At time of claim, Claims Research Specialist;
>     currently with SIU as Investigator I
> E00423 Lavinia White – Supervisor/Claims Appeals
> E14116 Joseph Hamilton – Clams Specialist I
> E14113 Lindsey Lehman – At time of claim, Level III Accident specialist;
>     currently Claims Lead Specialist
> E15996 Lindsay Long - Claims Appeal Specialist
> E03837 Felicia Sweat - Claims Appeals Coordinator
> E13174 Lisette Perez – Claims Disability Specialist
> AK1905 letter history - system generated letter, no human user
> E15617 Taporchia Jones – Claims Lead Specialist
> E12164 Niconya Samuel – Supervisor/Claims Ops
> E80948 Lavonda Scruggs – Claims Lead Specialist/Admin Team
> E01727 and Cindy (462) – Cynthia Lang – At the time of claim, Claims
>     Lead Specialist; currently Supervisor/Claims Ops
> E00423 Lavinia White – Supervisor/Claims Appeals

AFLAC disclosed no attorney as having participated in Mr. Fees' claim.

**REQUEST FOR PRODUCTION NO. 2:**  All documents maintained by or in the possession of any employee of you related to the Plaintiff Jody Fee's claim for

benefits made on or about December 15, 2017.  This request includes benefits paid under any policy of insurance issued by Defendant to Mr. Fees and is intended to include, but is not limited to all computer-based data created in the handling of all such claims.

**RESPONSE NO. 2:**  Defendant objects to Request No. 2 on the grounds that it is overbroad, irrelevant to Plaintiff's claims and Defendant's defenses, and that the burden associated with providing a response as requested would not be proportional to the needs of this case. Defendant further objects to Request No. 2 on the grounds that it seeks private or confidential personal information about individuals who are not parties to this action. Subject to and without waiving these objections, Aflac states that it has already produced all discoverable, non-privileged information in its possession to Plaintiff. Specifically, the claim file contains all non-privileged documents received and generated in the course of handling Plaintiff's claim. By way of further response, and without waiving said objections, Defendant will produce the claim file pertaining to Accident Policy No. P0H4W5R4 despite Plaintiff's claim solely pertaining to Short-Term Disability Policy No. P0H4W5R7.

**REQUEST FOR PRODUCTION NO. 7:**  All documents and/or correspondence relating to any coverage or legal opinions obtained by you or on your behalf or provided to you Plaintiff's claim, Claim Number 003729114, that is the subject matter of this lawsuit.

**RESPONSE NO. 7:**  Defendant objects to Request No. 7 on the grounds set forth in the General Objection above and on the grounds that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection from disclosure. Subject to and without waiving said objections, AFAC states that it has already produced all discoverable information to Plaintiff.

**REQUEST FOR PRODUCTION NO. 9:**  Produce a copy of all documents which any of your adjusters, employees, agents or representatives relied upon in evaluating Plaintiffs short-term disability insurance policy claim.

**RESPONSE NO. 9:**  Defendant objects to Request No. 9 on the grounds set forth in the General Objections above and on the ground that it seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, or any other privilege or protection from disclosure.  Subject to and without waiving said objections, *see* the claim file, which has already been produced.

Although AFLAC produced a number of additional documents in response to the March 9,

2020 Rule 37 conference, no additional information was produced in regard to coverage or legal

opinions created by AFLAC during its handling of Mr. Fees' claim.  Consequently, Plaintiff did not pursue the matter further.  However, on July 9, 2020, Plaintiff deposed AFLAC employee Jennifer Jeter pursuant to Federal Rule of Civil Procedure 30(b)(6).  Ms. Jeter testified that she is an AFLAC claims consultant with nearly 3 decades of experience whose primary job responsibilities involve assisting less experienced employees review "difficult files" and addressing state insurance department complaints.  Ex. 7 - Deposition of Jeter, p. 7.

Surprisingly, Ms. Jeter testified that she was asked to review Mr. Fees' claim *prior* to the filing of the instant action and to provide one of the many AFLAC claims handling employees that participated in the claim "some specific guidance."[2]  *See* Ex. 7 - Deposition of Jeter, p. 14-15.  Ms. Jeter testified that she directed the claims handling employee working on Mr. Fees' claim to submit her request to AFLAC's "legal review" process.  *Id.* At p. 15-17, 27.  Ms. Jeter described the purpose of the "legal review" as providing AFLC's claims handling employees "assistance with the review of the file and the policy language."  *Id.* at 18-20.  Ms. Jeter testified that the result of the "legal review" is normally a communication from the attorney conducting the review to the claims handling employee requesting the review with recommendations on how to properly handle the claim at issue and that claims handlers copy these recommendations into their claim notes.  *Id.* at 20-22, 107-109.  Ms. Jeter refused to testify as to the recommendations set forth in the "legal review" at issue here, claiming the same was protected by attorney-client privilege.  *Id.* at 22-23.  She did, however, testify that AFLAC's claims handling employees are trained to rely upon the

---

[2] AFLAC's claim file is devoid of any reference to the issues she was asked to review or the "specific guidance" provided by Ms. Jeter to the individuals handling Mr. Fees' claim.  When this "specific guidance" was provided, what it was about, and to whom it was provided remains a mystery.

recommendations made within "legal reviews" and that at least one AFLAC claims handler likely relied on the "legal review" in the handling of Mr. Fees' claim. *Id.* at 109.

## Argument and Authorities

### I.      Discovery Standard

Federal Rule of Civil Procedure 26 provides in pertinent part:

... Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

The Tenth Circuit has explained that Rule 26(b) creates a two-tiered discovery process; "the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action." *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1188–89 (10th Cir. 2009). If the parties disagree as to the relevance of requested discovery, the court becomes "involved to determine whether discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." *Id.* at 1189.

When the requested discovery appears relevant, **the party opposing discovery** has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Barton v. Tomacek*, 2012 WL 4735927, at *3 (N.D.

Okla. Oct. 3, 2012) (emphasis added). Objections to discovery requests must be stated with specificity. Mere boilerplate objections or the familiar litany of "overly broad, vague or burdensome," without more, is not sufficient. *See Howard v. Segway, Inc.*, 2013 WL 869955, *3 (N.D. Okla. March 7, 2013); *Leisure Hospitality, Inc. v. Hunt Properties, Inc.*, 2010 WL 3522444, *3 (N.D. Okla. September 8, 2010); *Wyatt v. ADT Sec. Services, Inc.*, 2011 WL 1990473, *2 n. 1 (N.D. Okla. May 23, 2011).

In a bad faith action, the plaintiff is entitled to discover "the facts known or knowable to the insurer at the time of the insured's claim[]." *Darzenkiewicz v. The Honorable Niles Jackson*, 904 P.2d 66 (Okla. 1994), J. Opala, concurring. Such is the case even when an attorney is assisting in the investigatory process. *See Hall v. Goodwin*, 775 P.2d 291 (Okla. 1989)(holding that the trial court's refusal to order production of statements taken by insurer's attorney was error as "there is no other method to precisely determine the facts upon which [the insurer] based its decision. . ."). This is because "bad faith actions against an insurer. . .can only be proved by showing exactly ***how*** the company processed the claim, ***how*** thoroughly it was considered and ***why*** the company took the action it did." *Brown v. Superior Court in and for Maricopa County*, 670 P.2d 725, 734 (Ariz. 1983)(emphasis added).

## II.   Claim Files.

In this bad faith lawsuit based partly on an inadequate investigation, Plaintiff carries the burden of showing not only what AFLAC knew and relied upon during its handling of their claims, but what AFLAC would have known had it conducted a thorough and fair investigation of their claims. *Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F3d 1117 (10th Cir. 2102); *Oulds v. Principal Mutual Lie Ins.*, 6 F.3d 1431 (10th Cir. 1993). Commonly, insurance companies and the employees responsible for making claims decisions memorialize the activities taken during

8

the investigation and decision-making process within its claim file.  Michael T. Murdock, *Claims Operations - A Practical Guide* (Intl. Risk Mgmt. Inst., Inc. 2010) at 123-124.  IN fact, as a matter of law, all pertinent actions in the handling of a claim should be memorialized such that they can be reconstructed at a later date, if necessary.  Okla. Stat., Tit. 36, sec. 1250.4.  Accordingly, insurance company claim files are most definitely discoverable.  *Darzenkiewicz v. The Honorable Niles Jackson*, 904 P.2d 66 (Okla. 1994).

It is clear from AFLAC's testimony that the "legal review" at issue was conducted as part of AFLAC's handling of the claim and that it is part of AFLAC'c claim file.  It was Ms. Jeter that was first approached by an AFLAC claims handling employee and asked to provide assistance with Mr. Fees' claim.  *See* Ex. 7 - Deposition of Jeter, p. 18-20.  But, Ms. Jeter was unable to offer any assistance as she was occupied with other, more pressing matters.  *Id*. at 19-20.  Because Ms. Jeter couldn't assist in the matter, she referred the matter for a "legal review."  *Id.*  She did so because, in the absence of another tenured claims consultant, the legal department would be the only other available resource with the knowledge necessary to address the issue presented by the claims handler.  *Id.*  Further, Ms. Jeter testified that AFALC's claims handlers, when confronted with a confusing or complex claims issue, are expected to seek guidance from herself or the legal department.  *See* Ex. 7 - Deposition of Jeter, p. 18-20.

All facts known to Plaintiff indicate that AFLAC's in-house counsel reviewed his claim, produced a claims recommendation to the individuals responsible for paying or denying the claim, and that those individuals relied upon the "legal review" in making their claims decision.  As such, the "legal review," any communications related to the same, and any claim notes bearing on the "legal review" should be produced immediately as they provide insight into how and why Mr. Fees' claim was handled as it was.

III.    **Advice of Counsel in the Claims Handling Process.**

Given that insurance is a heavily regulated industry governed largely by state law and that there exist innumerable variations of policy requirements across the nation, is not unusual for an attorney to assist an insurance company in the handling of a claim.  In the context of insurance bad faith claims, there is a rebuttable presumption that actions taken by attorneys in the handling of a claim *are not* protected by attorney-client or work-product privileges.  *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 398-399 (N.D. Okla. Feb. 17, 2010).  However, when such a privilege is alleged, the discoverability of the work an attorney has done is largely a question of whether the advice is provided for a predominantly "business purpose," rather than a "litigation purpose." *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 395 (N.D. Okla. Feb. 17, 2010).

In diversity cases, the applicability of attorney-client privilege is controlled by state law and work-product privilege by federal law.  *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998).[3]  In matters of privilege, the burden of proof rests with the party asserting the privilege.  *First Aviation Services, Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001).

---

[3] It is unclear whether AFLAC is asserting attorney-client privilege in regard to the "legal review" and any communications or claim notes associated with it.  Plaintiff believes that the redacted portions of AFLAC's claim file contain a copy of the "legal review," but cannot be certain.  If this is the case, AFLAC has asserted *only* that the document is protected by work-product privilege. *See* Ex. 2 - Privilege Log.  However, when Plaintiff learned of the existence of the "legal review" during Ms. Jeter's deposition, counsel asserted information regarding the same was protected by attorney-client privilege.  *See* Ex. 7 - Deposition of Jeter, p. 22-23.  Plaintiff will proceed as if AFLAC has legitimately asserted both privileges.

A.      No Attorney-Client Privilege Applies.

Attorney-client privilege is codified by Okla. Stat., Tit. 12, sec, 2502.  The privilege is designed to protect communications with a client "who consults an attorney with a view towards obtaining legal services or is rendered professional legal services by an attorney."  *Id.*  To avail oneself of this privilege, he, she, or it must prove there was an attorney-client relationship and that the communications were confidential in nature.  *Chandler v. Denton*, 741 P.2d 855, 865 (Okla. 1987).  The confidential communications must also be "made for the purpose of facilitating the rendition of legal services to the client."  Okla. Stat. Tit. 12, sec. 2502(B).

Here, AFLAC cannot muster the factual support necessary to support its claim of privilege. AFLAC must show that the attorney performing the "legal review" was providing "professional legal services."  Such a task is difficult because an attorney performing tasks that fall within the ordinary course of business for his or her employer are considered *not* to be acting as attorneys and their actions are not privileged.  *Mission Nat'l. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986).  This is especially true of in-house counsel at insurance companies.  *See Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 399 (N.D. Okla. Feb. 17, 2010)("Most Courts have adopted a rebuttable presumption that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made").

Obviously, the business of an insurance company is the handling of claims made.  *See e.g. Hall v. Goodwin*, 775 P.2d 291, 295 (Okla. 1989).  As such, any role AFLAC's in-house counsel played in investigating and / or advising claims-handling employees on how to properly adjust Mr. Fees claim is simply not protected.  AFLAC's Corporate Representative testified this was exactly the case with the "legal review" in dispute here.  *See* Ex. 7 - Deposition of Jeter, p. 18 (The purpose

11

of referring a matter to legal review is "just to get assistance with the review of the file and the policy language"). Needless to say, the relevance of this material is unquestioned as the most profound violations of the duty of good faith and fair dealing alleged by Plaintiff involve the failure of more than a dozen AFLAC claims handling employees to read plain language of the insurance policy at issue, language this Court has determined to be unambiguous. *See Order and Opinion*, Doc. 48, p. 10.

AFLAC may contend that the "legal review" process implicated a dual purpose involving both business and legal advice. However, advice given with such a dual purpose is not protected by privilege, especially in insurance bad faith cases. *See* 27 A.L.R. 5th 76 (1995), Sec. 41.

Finally, assuming that AFLAC's claim of attorney-client privilege is meritorious, it has impliedly waived the privilege. If AFLAC relied upon the "legal review" in rendering its claims decisions, it has waived attorney-client privilege. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169 (Ariz. 2000)(*en banc*). Again, Ms. Jeter testified that this was the case with the "legal review" at issue here. *See* Ex. 7 - Deposition of Jeter, p. 107-109.

Because AFLAC cannot prove that the "legal review" performed in the claim at issue or the communications and claim notes related to the same meet the elements of attorney-client privilege under Oklahoma Law, they should be compelled to produce the same immediately.

**B.      Work-Product Privilege.**

AFLAC also objects to producing the information sought by Plaintiff by claiming work-product protection. The work-product doctrine only provides *qualified* protection from discovery and may be overcome in proper circumstances as only documents "prepared in anticipation of litigation" are protected. Fed.R.Civ.P. 26(b)(3). Documents *not* prepared in anticipation of litigation are discoverable. *See Wikel v. Wal-Mart Stores, Inc.* 197 F.R.D. 493, 495 (N.D. Okla.

2000).  The mere involvement of an attorney in the preparation of a document "does not prove [it] was prepared in anticipation of litigation.  *Id.* at 495.  Moreover, "the fact that a defendant anticipates the contingency of litigation" does not automatically render the document protected work-product. *Id.* at 495.

AFLAC cannot make the required showing that the information sought in this motion was prepared in anticipation of litigation because the binding testimony of AFLAC's Corporate Representative indicates otherwise.  Ms. Jeter testified that it was she who was first approached by the AFLAC claims handler involved in Mr. Fees' claim.  That Ms. Jeter, who is not an attorney, was consulted first is proof-positive that the feedback sought by the claims handler was related to whether or not Mr. Fees claim was payable and did not involve litigation strategy or tactics. Nevertheless, Ms. Jeter's testimony was that the purpose of her referral of the matter to "legal review" was for the purpose of "assistance with the review of the file and the policy language" *Id.* at 18-20.  All available facts point to one conclusion.  The "legal review" at issue here was conducted solely to ensure the proper handling of Mr. Fees claim and was made in the normal course of claims handling under existing claims handling practices implemented by AFLAC. AFLAC should thus be required to produce the requested information immediately and Plaintiff should be afforded leave of Court to gather testimony regarding the newly disclosed information.

## IV.    Conclusion.

AFLAC should be compelled to produce the "legal review" it conducted during the handling of Mr. Fees' claim as well as any communications leading up to or resulting from the same.  Likewise, AFLAC should be compelled to produce unredacted claim notes in which the legal review is referenced.  All evidence available to the Court indicates the "legal review" was requested and provided as an integral part of the handling of Mr. Fees' claim, not because AFLAC

13

was preparing for litigation.  As such, the information sought is protected by neither attorney-client, nor work-product privilege.  Finally, Plaintiff should be granted leave of Court to further explore the documents sought by deposition of the individuals who participated in the "legal review" process or by further deposition of AFLAC's Corporate Representative(s) pursuant to Fed.R.Civ.P. 30(b)(6).

Respectfully submitted,

/s/*Jacob L. Rowe*
Simone Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
FULMER SILL PLLC
1101 N. Broadway Ext., Suite 102
Oklahoma City, OK  73103
Phone:   (405) 510-0077
Fax:     (800) 978-1345
Email:   sfulmer@fulmersill.com
hlujan@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this 28th day of July, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

  Lauren Oldham
  OGLETREE DEAKINS NASH SMOAK
   & STEWART, PC
  The Heritage Building
  621 N. Robinson Ave., Ste 400
  Oklahoma City, OK  73102
  Lauren.Oldham@ogletree.com

  Steven Silver
  OGLETREE DEAKINS NASH SMOAK
   & STEWART, PC
  2 Monument Square, 7th Floor
  Portland, ME  04101
  Steven.Silver@ogletree.com

  Kristina N. Holmstrom
  OGLETREE DEAKINS NASH SMOAK
   & STEWART, PC
  Esplanade Center III
  2415 East Camelback Rd., Suite 800
  Phoenix, AZ  85016
  Kristina.Holmstrom@ogletree.com

          */s/ Jacob L. Rowe*