IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JODY FEES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-476-CVE-JFJ |
| | ) |
| AFLAC, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF JODY FEES' RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND MOTION FOR SUMMARY JUDGEMENT**

**Comes now** Plaintiff and objects to Defendant AFLAC's *Motion for Leave to File Second Motion Summary Judgment* ("Motion for Leave"). AFLAC has provided the Court no legitimate basis upon which its request could be granted. The Motion for Leave should be denied.

**I.     AFLAC has been on notice for weeks that Plaintiff objects to the relief sought.**

In its Motion for Leave, AFLAC notifies the Court that "Plaintiff did not return AFLAC's email or call and specify whether he was opposed or unopposed to the Motion." Motion for Leave, Doc. 65, p. 1. While it is true that Plaintiff didn't respond to AFLAC's request, it is equally true that he didn't have much time to do so. AFLAC's counsel attempted to contact Plaintiff's counsel at approximately 1:45 pm on July 30, 2020. *See* Ex. 1 - 7.30.20 Email from Oldham. AFLAC's *Motion for Leave* was filed the following morning. Nevertheless, counsel for the parties had previously discussed the potentiality of AFLAC filing the instant motion and Plaintiff's counsel, at that time, announced that Plaintiff would likely object. The undersigned inquired as early as June 8, 2020 whether AFLAC intended to make such a request of the Court and on what grounds it contended warranted such extraordinary relief. *See* Ex. 2 - 6.8.20 Email from Rowe. No grounds for affording

1

AFLAC an additional summary judgment filing were provided then, in yesterday's email, or in the actual *Motion for Leave* filed with this Court. As such, Plaintiff still objects.

II.     **A brief introduction.**

This case involves Plaintiff's quest to recover benefits under a short-term disability insurance policy issued to him by AFLAC and damages for AFLAC's failure to abide by the Duty of Good Faith and Fair Dealing.

Plaintiff sustained an accidental injury when he twisted his knee walking down a boat ramp in August 2016. The injury ultimately required him to undergo arthroscopic surgery. After the surgery, Plaintiff was unable to perform the essential duties of a plumber, and was thus disabled as defined by his insurance policy.

Plaintiff made a claim under the policy and, with the help of his surgeon and insurance agent, provided AFLAC documentation in support of his claim. When the claim was not paid, Plaintiff enlisted the assistance of attorney Mark Heidenrieter who also provided documentation to AFLAC in support of Plaintiff's claim. Still, AFLAC refused to pay the benefits due to Plaintiff under the policy.

Plaintiff filed this action on July 30, 2019 alleging AFLAC breached its contract of insurance and that it had done so in violation of the duty of good faith and fair dealing owed to Oklahoma first-party insureds. The crux of Plaintiff's complaint is that AFLAC subjected Mr. Fees' claim to an unreasonable claims handling system in which none of the many claims handlers that participated in his claim knew or understood the coverage set out in the insurance policy – which is essential to proper claims handling and for compliance with the duty of good faith and fair dealing. The result was a claims investigation that focused on the

wrong coverage. Because all of the individuals who participated in the handling of the claim failed to read Mr. Fees' insurance policy and / or properly interpret the terms of the same, AFLAC placed upon Plaintiff unnecessary, onerous, and duplicative requests for documentation that were wholly unrelated to the coverage that Mr. Fees was entitled to. Mr. Fees tried his best to comply with these requests, but his claim was continuously denied.

Specifically, Mr. Fees' short-term disability policy provides total disability benefits in the event an insured suffers an injury that renders him or her unable to perform the essential functions of his or her profession. The policy distinguishes between benefits available to claimants based on whether, at the time of their injury, they are working a full-time job or are not working a full-time job. There are different documentation standards for these two coverages. A claimant who is working full-time at the time of the injury must prove: (1) he or she suffered an off-the-job injury; (2) he or she wasn't working at the time; (3) the injury resulted in total disability; (4) the disability lasted longer than 14 days (the policy's elimination period); and (5) the disability occurred within 90 days of the insured's last medical treatment. On the other hand, a claimant who is not employed with a full-time job must prove all of the above, and also provide substantiation that he or she cannot perform 3 or more activities of daily living ("ADLs") as defined in the policy. Unquestionably, a claimant who is *not* fully employed at the time of the injury has a harder row to hoe.

In its *Answer to Complaint* [Doc. No. 7] AFLAC denied that Plaintiff was entitled to any insurance benefits under his insurance policy and that, at all times, AFLAC had handled Mr. Fees' claim appropriately. Approximately four and a half months later, on January 16, 2020, AFLAC filed its *Motion for Summary Judgment* ("MSJ") [Doc. 19] in which it sought

judgment as a matter of law on both Plaintiff's breach of contract and breach of the duty of good faith theories of recovery.[1] Plaintiff responded and set forth the evidentiary basis supporting his claim for benefits under the policy and his claim for damages resulting from AFLAC's bad faith claims handling. *See Plaintiff's Response and Objection to Defendant's Motion for Summary Judgment* [Doc. 41].

On June 5, 2020, the Court entered its *Opinion and Order* and overruled AFLAC's MSJ. [Doc. 48]. The Court concluded that "plaintiff met all of the pre-requisites for short term disability benefits under the Policy" and denied AFLAC's request for judgment on Plaintiff's bad faith theory of recovery stating "it is arguable that AFLAC should have investigated to determine if there was a qualifying injury before the December 5, 2017, surgery[]." [Doc. 41, pp. 12, 16].

On July 9, 2020, Mr. Fees conducted a Corporate Representative deposition of AFLAC pursuant to Federal Rule of Civil Procedure 30(b)(6). In the deposition, AFLAC testified: "[w]e have information in hindsight looking at this file ***after litigation had been initiated***, it does appear that we would be able to provide benefits." [Ex. 3 - Deposition of AFLAC Corporate Representative, p. 88-89 (emphasis added)]. AFLAC further testified that it was in possession of this information as early as February 23, 2018, approximately two and a half months after Mr. Fees made his claim, and more than a year before this litigation was filed. [Ex. 3, p. 101-102, 165]. The day after the Corporate Representative deposition, AFLAC

---

[1] AFLAC had not issued any written discovery requests or conducted any depositions prior to filing the Motion for Summary Judgment.

4

paid Mr. Fees for the benefits he was entitled to under the short-term disability policy, along with interest. [Ex. 4 - EOB with Check].

### III. Argument and Authority.

The Federal Rules of Civil Procedure allow a party in a civil action to seek summary judgment provided "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Id. at 327.

To effectuate this efficient disposition of civil cases, this Court has elected to enact Local Rule 56.1 which provides, "[a]bsent leave of Court, each party may file only one motion under Fed. R. Civ. P. 56." Both the United States District Courts for the Eastern and Western Districts of Oklahoma have identical Local Rules. The Western District of Oklahoma has indicated the Local Rule exists "to consolidate a party's arguments in one document in the interest of efficiencies which serve both the parties and the Court." *Odom v. Potter*, 379 F.App'x 740, 741 (10th Cir. 2010) (unpublished). Although Plaintiff's counsel has not found similar language setting forth why this Local Rule 56.1 was enacted in this jurisdiction, it stands to reason it is the same.

As with most Rules however, exceptions may be made to Local Rule 56.1. A second motion for summary judgments may be appropriate "if supported by new material, or when the grounds for the dispositive motion did not exist when the parties moved for summary judgment.". *See* Doc. 65, p. 1, citing *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir. 1979) and *Stanphill v. Health Care Serv. Corp.*, No. CIV-06-985-BA, 2008 WL 2323240, at *1 (W.D. Okla. Aug. 20, 2008). Moreover, any "new material" available at the time of the filing of a prior summary judgment motion, but not used, does ***not*** constitute "new material" to support additional motions. *Green v. New Mexico*,

5

420 F.3d 1189, 1196 (10th Cir. 2005) (emphasis added). "New material" must be information that was unavailable to the moving party at the time it first sought summary judgment. *See* 6 Moore's Federal Practice Sec. 56.14(2) at 363-366.

    **(1).    There is no "new material" upon which to base a new MSJ.**

AFLAC's *Motion for Leave* is premised on its representation that since the entry of the Court's *Opinion and Order* that it has "engaged in extensive discovery, obtained new evidence, and identified grounds for a dispositive motion that did not exist when the parties first moved for summary judgment."[2] [Doc. 65, p. 2]. First, AFLAC fails to apprise the Court (or Plaintiff) of what "new evidence" it claims to have uncovered since the Court's *Opinion and Order* was entered. Frankly, Plaintiff's counsel is hard-pressed to believe that any purportedly "new evidence" exists based on the nature and extent of the discovery conducted since Defendants' first MSJ. For example, since the first motion for summary judgment, Defendant has only issued a single set of discovery to Plaintiff and four (4) subpoenas - to Forrest Shoemaker (Plaintiff's former employer), Mr. Heidenreiter, and to two (2) physician's who've provided medical care to Plaintiff. Plaintiff provided his responses to AFLAC's discovery on July 17, 2020. AFLAC has received documents pursuant to its subpoena from Forrest Shoemaker which were provided to Plaintiff. It is unknown whether any other documents have been received from the other subpoenas, but the same are subject to a Motion to Quash filed by Plaintiff on July 23, 2020. *See* [Doc. 59] - *Plaintiff's Motion to Quash* and [Doc. 60] - *Supplement to Plaintiff's Motion to Quash*. The parties have also conducted the depositions of Jennifer Jeter (AFLAC's Corporate Representative), Sherri Irions (an AFALC employee who participated in the handling of Plaintiff's claim), Corey MacIntyre (Plaintiff's insurance agent), Mort Welch (Plaintiff's claims handling expert), and Plaintiff himself. Plaintiff's counsel has carefully

---

[2] Plaintiff has not yet filed a dispositive motion. The deadline to do so is August 10, 2020.

reviewed all of the information exchanged by the parties since the entry of the Court's *Opinion and Order* and can isolate no information that would warrant the relief that AFLAC has requested here.

AFLAC ambiguously pleads that it has uncovered evidence "which shows that AFLAC had a reasonable basis for initially disputing coverage and that the decision was simply a mistake and does not rise to the level of bad faith." [Doc. 65, p. 2]. However, again, AFLAC does not disclose what this evidence is. The only substantive change of circumstance referenced by AFLAC is the payment of Mr. Fees' claim.

If there is "new material" upon which AFLAC is basing its motion, it likely comes in form of deposition testimony of its Corporate Representative. On July 9, 2020, Ms. Jeter testified that a claim is payable if:

- "…the policyholder suffered an off-the-job injury…" *See* Ex. 3, p. 66:19-24;
    - "… the off-the-job injury suffered by an insured occur while the insured is employed at a full-time job…" *See* Ex. 3, p. 74:15-20;
    - "… the off-the-job injury suffered by the policyholder cause[d] a total disability…" *See* Ex. 3, p. 76:15-20;
    - "… the total disability last[ed] more than 15 days…". *See* Ex. 3, p. 79:21-25; and
    - "…the total disability occurred within 90 days of the insured's last medical treatment…" *See* Ex. 3, p. 82:19-24.

Ms. Jeter then reviewed various documents that had been provided to AFLAC by Mr. Fees, his physician, and his insurance agent and stated that, "[w]e have information in hindsight looking at this file ***after litigation had been initiated***, it does appear that we would be able to provide benefits." *See* Ex. 3, p. 66-89; *specifically see* p. 89:1-4 (emphasis added). However, all of the referenced documents were received by AFLAC on or before February 23, 2018, mere months after the claim had been made and well before the initiation of this litigation. *Id.* Ms. Jeter also testified that "we

7

definitely [] missed opportunities and we did not adjudicate the claims correctly" and that AFLAC's claims handlers "did not adjudicate based on the terms of the policy." *See* Ex. 3, p. 113:8-22. She continued that "[i]t does appear there was an issue with their understanding based upon my review of their denial letters" and that "we definitely had challenges with providing a positive outcome for Mr. Fees." *See* Ex. 3, p. 114:8-16 and p. 152:4 - 22.

Moreover, it is clear from Ms. Jeter's testimony that she did not review any "new material" prior to her testimony. She testified that AFLAC ceases claims handling activity when an insured files suit. *See* Ex. 3, p. 22:1-13; p. 89:8-13; p. 95:5-13; p. 113:23 - p. 114:7. She also noted that she did not become aware of AFLAC's wrongful denial of Mr. Fees' claim until she reviewed his file in preparation for litigation. Ex. 3, p. 153:5-13.

In essence, AFLAC, through its Corporate Representative, after reviewing *only* documents received within the first few months of Mr. Fees' claim concluded that AFLAC had failed to properly interpret the terms of Mr. Fees contract and that benefits should have been paid to him *prior* to the filing of this lawsuit. In other words, AFLAC's change of position was based exclusively on information it had possessed for years, not "new material."

This testimony and AFLAC's complete change of position on the validity of Mr. Fees claim resulted in the payment of $11,273.29 to Mr. Fees on July 10, 2020.[3] It was based not on knowledge uncovered since the filing of its January Motion for Summary Judgment, rather based on a discerning examination of the information provided to it by Plaintiff during the pendency of his claim in 2018.

---

[3] This amount purportedly represents the disputed benefit amount and statutory interest on those benefits pursuant to Oklahoma law.

### (2).    All material possessed by AFLAC was available to it *before* the first MSJ.

As noted above, "new material" sufficient to warrant multiple dispositive motions must not have been available to a movant prior to the filing of its original dispositive motion. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005), s*ee also* 6 Moore's Federal Practice Sec. 56.14(2) at 363-366.  ***All information currently in AFLAC's possession was available to it at the time it was handling this claim***.

During the pendency of Mr. Fees' claim, Plaintiff fully cooperated in AFLAC's investigation. Mr. Fees personally submitted a number of documents in furtherance of his claim, including HIPAA compliant medical authorizations that would have allowed AFLAC to gather medical records it deemed necessary. *See* AFLAC's Claim File, Doc. 19-1, p. 166-168.  In fact, AFLAC used this authorization to order medical records from Mr. Fees' physician. *See* AFLAC's Claim File, Doc. 19-1, p. 197-198.  The employer for whom Mr. Fees worked when he suffered the injury that resulted in his disability submitted information on his behalf too. *See* AFLAC's Claim File, Doc. 19-1, p. 197-198. Mr. Fees physician and insurance agent, acting on his behalf, also provided numerous documents directly to AFLAC. *See* AFLAC's Claim File, Doc. 19-1, p. 34-38; 44-46; 53-60; 71-76; 85-92; 100-102; 134-135; 152-154; 188-191; 213-220; 228-238; and 247-248.  Finally, Mr. Heidenreiter, Mr. Fees attorney, submitted various documents, many of which had been received by AFLAC several times over, to AFLAC. *See* AFLAC's Claim File, Doc. 19-1, p. 254-299; 350-438; 450-453; and 466-468.  Given Mr. Fees' legal and contractual obligations to cooperate with AFLAC's handling of his claim and the great lengths that he and others took to assist him, it strains the imagination to believe that AFLAC would have been denied *any* information it needed to issue payment to Mr. Fees. Even though AFLAC's investigation was singularly focused on the wrong coverage, it received all of the information necessary to pay Mr. Fees' claim anyway. Ex. 3, p. 162:1-20; p. 89:1-4.

Additionally, assuming *arguendo* that AFLAC now possesses information obtained in discovery that was not available to it *prior* to the filing of this lawsuit and discovered *after* the filing of its January MSJ, it must set forth in detail *why* it was not acquired sooner. It is Plaintiff's position that AFLAC has not and cannot provide a good faith justification for this failure. This action was filed more than a year ago on July 30, 2019. *See* Petition, Doc. 1. AFLAC filed its MSJ nearly six (6) months later on January 16, 2020. **Prior to doing so, AFLAC chose to conduct no discovery.** If AFLAC indeed finds itself with impactful information related to its claims and defenses in this matter that would render an award of summary judgment more likely than before, it can only be because it waited until the eleventh hour to engage in the discovery process. As referenced above, it failed to issue *any* discovery requests to Plaintiff until June 17, 2020, a mere month and half away from the Court's discovery deadline of July 31, 2020. Additionally, it didn't conduct a deposition of Plaintiff or any of his witnesses until last week when it conducted brief depositions of Mr. Fees and his expert witness Mr. Welch.

Had AFLAC opted to wait until having conducted discovery in this case *before* filing its MSJ, it would still have been able to seek judgment as the deadline for filing dispositive motions isn't until August 10, 2020.

(3)     **Even if AFLAC can show "new material" has been discovered, such material is irrelevant, inadmissible, and inappropriate for use in a second motion for summary judgment.**

Assuming *arguendo* that AFLAC has actually located substantive information that was unavailable to it prior to filing its January MSJ, it will not be able to use it. The Motion for Leave is an exercise in futility. Insofar as Plaintiff's breach of contract theory of recovery, it is now undisputed that AFLAC owed Mr. Fees benefits under his AFLAC policy and AFLAC has issued payment for those benefits. It is equally undisputed that AFLAC's actions were the result of numerous claims

handling employees having no knowledge of the terms of the insurance policy under which Mr. Fees should have been paid.

Federal Rule of Civil Procedure 56(c)(2) allows a party opposing summary judgment to object to inadmissible evidence presented in support of summary judgment. Even if relevant, any "new material" identified by AFLAC at this late stage of litigation that would militate against Mr. Fees' claim being paid would be inadmissible under Federal Rule of Evidence 403 as confusing and misleading. Plaintiff would present the jury with evidence that AFLAC initially denied Mr. Fees claim, that AFLAC later acknowledged the claim should have been paid, and then, months before trial, paid the claim. Would Defendant then present "new material" that the claim should not have been paid? Even describing the scenario in which any "new material" related to Plaintiff's breach of contract would be presented is confusing. The presentation of such evidence at trial would be terribly confusing and misleading to a jury tasked with determining whether AFLAC's claims handling activities were reasonable.

In regard to Mr. Fees' theory of recovery for breach of the duty of good faith, any evidence acquired *after* this lawsuit was filed is clearly inadmissible pursuant to the *Buzzard* Relevance Rule. This rule holds that the operative question in a bad faith action is whether the insurer had a "good faith belief, *at the time its performance was requested*, that it had justifiable reason(s) for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) (emphasis in original) (quoting *Buzzard v. McDaniel*, 736 P.2d 157, 159 (Okla. 1987)). As such an insurer must defend its claims handling position with only the facts and claims position it actually relied upon in denying the claim. *Id*. at 1114. As this Court has previously noted, "an insurance company [can] not rely on information it… obtained after denying a claim to support that denial." *Cantrell v. Amica Mut. Ins. Co.,* No. 08-CV-0546-CVE-PJC, 2009 WL 3157338, fn. 13 (N.D. Okla. Sept. 25, 2009). Any "new material" discovered by AFLAC must necessarily have come into

AFLAC's possession *after* it denied Mr. Fees' claim. As such, it is clearly inadmissible in regard to Mr. Fees' bad faith theory of recovery.

(4) **AFLAC's current situation is one of its own making and is the very situation Local Rule 26.1 is designed to prevent.**

Plaintiff's visceral response to the instant motion is the classic idiom:

"You've made your bed, now lie in it."

This is because AFLAC's decision to file its January MSJ was a strategic one, designed to leverage Plaintiff to settle this lawsuit. AFLAC's MSJ was filed on January 16, 2020. *See* Doc. 19. Prior to the filing of the motion, AFLAC had received Plaintiff's *First Set of Discovery to Defendant AFLAC* which were issued on December 30, 2020. *See* Ex. 5 - Plaintiff's First Discovery to AFLAC. On January 30, 2020, AFLAC's counsel asked that AFLAC be allowed to provide its responses to Plaintiff's discovery requests on February 24, 2020 and, in exchange, afforded Plaintiff until March 5, 2020 to respond to the pending MSJ. Approximately one week later, on February 7, 2020, AFLAC made an *Offer of Judgment* pursuant to Fed.R.Civ.P 68 to Plaintiff in the amount of $9,166.30, the response to which was due on or before February 21, 2020.

Obviously, the result of this procedural gamesmanship was to place Plaintiff in a "trick box." Plaintiff was put in the unenviable position of assessing the strength of his bad faith claim without the benefit of AFLAC having responded to discovery. Moreover, he was required to do so while AFLAC's MSJ was pending. As such, AFLAC willingly forewent the discovery process in an attempt to force Plaintiff to settle this matter without the benefit of the discovery that has been conducted since, including the deposition testimony from AFLAC's Corporate Representative cited above.

Such procedural gambits should not be rewarded. AFLAC had months to conduct discovery in support of a dispositive motion. It chose not to. Moreover, AFLAC was not under any pressure

to file its dispositive motion as the deadline to do so under the Court's original *Scheduling Order* was April 3, 2020. *See* Doc. 17. It is apparent that AFLAC rolled the dice in filing its MSJ early and lost. Affording it an additional opportunity to dispose of Mr. Fees' claims by way of dispositive motion can only serve the master that Local Rule 26.1 is designed to vanquish. Requiring the Court to reconsider AFLAC's request for summary judgment, especially when presented with no meaningful argument in support of its request, would indeed be an inefficient use of the Court's time. This is especially so given the obvious care the Court took in ruling on AFLAC's MSJ two (2) months ago. *See* Doc. 48.

### VIII. Conclusion.

AFLAC has failed to meet its legal burden by providing no compelling "new material" unavailable to it when it filed its MSJ in January 2020. Moreover, the facts set forth above, show that it willingly eschewed the discovery process before filing the same. Perhaps, more importantly, the instant motion should be denied as futile. Because AFLAC has admitted Mr. Fees' claim was payable, that it was payable long before this suit was filed, and has paid what it believes is owed. Given the issues left for the Court to resolve, any "new material" would be inadmissible. AFLAC's *Motion for Leave* should be denied.

Respectfully submitted,

/s/*Jacob L. Rowe*
Simone Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
FULMER SILL PLLC
1101 N. Broadway Ext., Suite 102
Oklahoma City, OK  73103
Phone: (405) 510-0077
Fax:    (800) 978-1345
Email:  sfulmer@fulmersill.com
hlujan@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

      I hereby certify that on the 4th day of August, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lauren Oldham
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The Heritage Building
621 N. Robinson Ave., Ste. 400
Oklahoma City, OK 73102
(405) 546-3774
Fax (405) 546-3775
lauren.oldham@ogletree.com

Steven Silver
Ogletree Deakins Nash Smoak & Stewart, PC
2 Monument Square, 7th Floor
Portland, ME  04101
Steven.silver@ogletree.com


Kristina N. Holmstrom
Ogletree Deakins Nash Smoak & Stewart, PC
Esplanade Center III
2415 East Camelback Rd., Suite 800
Phoenix, AZ  85016
Kristina.holmstrom@ogletree.com


                                                                                          */s/ Jacob L. Rowe*