## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JODY FEES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0476-CVE-JFJ** |
| | ) | |
| **AMERICAN FAMILY LIFE INSURANCE** | ) | |
| **COMPANY OF COLUMBUS ("AFLAC"),** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are defendant American Family Life Insurance Company of Columbus's (Aflac's) six motions in limine (Dkt. ## 100, 101, 102, 103, 104, 105). The facts of this case are set forth in detail in the Court's October 16, 2020, opinion and order ruling on the parties' cross-motions for summary judgment (Dkt. # 115), and will not be repeated herein.

Defendant seeks to exclude the following information at trial: testimony of untimely disclosed witnesses Tara Sullivan and Bobby McCage (Dkt. # 100); evidence and testimony regarding Oklahoma's Unfair Claims Settlement Practices Act (Dkt. # 101); references to punishing defendant and/or punitive damages arguments in the first stage of trial (Dkt. # 102); "golden rule testimony," specific aspects of defendant's claims handling policies, that defendant owes the "benefit of the doubt" to its insureds, references to defendant's claims handling manual, and lay witness testimony on what is "fair" or "reasonable" (Dkt. # 103); evidence of plaintiff's alleged litigation-induced distress (Dkt. # 104); and evidence by witnesses or comments by counsel for compensatory damages based on defendant's earnings (Dkt. # 105).

Plaintiff has responded to all of defendant's motions, objecting to the defendant's requests (Dkt. ## 127, 128, 129, 130, 131, 132). Defendant has replied to all but one of those responses (Dkt. ## 136, 137, 139, 140), and the time to reply to has expired. Therefore, all of defendant's motions are fully briefed, and the Court addresses those motions below.

## I.

"The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'" Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008). However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (N.D. Okla. Apr. 22, 2016).[1] This case is in federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law. Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. Id. The parties are advised that all rulings on the motions in limine are preliminary.

---

[1]     This and other unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

## II.

### A. Defendant's Motion in Limine No. 1 (Dkt. # 100)

In defendant's first motion in limine (Dkt. # 100), defendant seeks to exclude testimony of "untimely disclosed witnesses."  Federal Rule of Civil Procedure 26 requires parties to disclose witnesses they intend to call at trial prior to the close of discovery. Fed. R. Civ. P. 26; see also Rosencutter as Tr. for L & M Rosencutter Family Tr v. Mercedes-Benz USA, LLC, No. 18-CV-0073-CVE-JFJ, 2018 WL 6191399, at *3 (N.D. Okla. Nov. 28, 2018)).  A party who fails to disclose a witness in violation of Fed. R. Civ. P.  26 may be precluded from using that witness at trial, unless the party can show the failure to disclose was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

Defendant acknowledges that plaintiff filed his amended witness list on July 31, 2020–the day that discovery closed.  Dkt. # 100, at 2.   Defendant argues that this was untimely under Fed. R. Civ. P. 26 because plaintiff knew he would call the newly-added witnesses when he made his initial disclosures and purposefully did not disclose them earlier.  As a result, defendant contends, the newly-added witnesses, Tara Sullivan and Bobby McCage, should not be permitted to testify. However, in defendant's motion, defendant fails to demonstrate how filing an amended witness list prior to the close of discovery constitutes a violation of Fed. R. Civ. P. 26.  Defendant merely states that plaintiff submitted his newly-added witnesses on the last day of discovery.  That, without more, fails to establish that plaintiff's disclosure of those witnesses is untimely.

In Rosencutter, this Court held that witnesses disclosed later in the discovery process should not be excluded solely because they were not disclosed at an earlier time.  In that case, this Court allowed the later-disclosed witnesses to testify because movant presented no evidence showing that

3

non-movant "purposefully deceived [movant] by omitting these witnesses from [non-movant's] initial disclosures." 2018 WL 6191399, at *4. Here, defendant also makes no such showing. Further, in plaintiff's response (Dkt. # 127), plaintiff asserts that the later submission of these witnesses was due to an oversight. Dkt. # 127, at 2. Absent evidence indicating otherwise, the Court is disinclined to infer bad faith delay.

Additionally, the Court notes that, here, just as in Rosencutter, defendant "could have cured any prejudice by seeking to take depositions after the discovery cutoff or by requesting an extension of scheduling order deadlines," but that defendant "pursued neither of these options and, instead, seeks to wholly exclude the testimony of these witnesses." Id. In fact, in his response to defendant's motion, plaintiff demonstrates that he offered to schedule depositions of the newly-added witnesses after the close of discovery, but that defendant did not pursue the offer. Dkt. # 127-5, at 1. Because defendant presents no evidence that plaintiff's counsel was uncooperative in scheduling depositions of the newly-added witnesses, or that supplemental disclosures made before the close of discovery were actually untimely or the result of bad-faith delay, the motion in limine to exclude the testimony of Tara Sullivan and Bobby McCage should be denied.

In reply to plaintiff's response (Dkt. # 136), defendant states that it is significantly prejudiced by the newly-added witnesses. The Court does not agree. All but one of the alleged prejudicial effects of the newly-added witnesses could have been obviated by reopening discovery. But, no request was ever made. In light of that fact, the Court finds that exclusion would be a drastic remedy. The one prejudicial effect that could not have been remedied by reopening discovery–that plaintiff and Tara Sullivan could have corroborated their testimony if their respective depositions

were not taken sequentially on the same day–is pure conjecture, especially given that defendant never even attempted to depose Tara Sullivan.

**B. Defendant's Motion in Limine No. 2 (Dkt. # 101)**

In defendant's second motion in limine, defendant seeks to exclude evidence and testimony relating to Oklahoma's Unfair Claims Settlement Practices Act (UCSPA) (Dkt. # 101). Specifically, defendant argues that there is no private right of action under the UCSPA, and that, as it is the sole provenance of the Oklahoma Insurance Commissioner to determine if the Act has been violated, "it is irrelevant and unfairly prejudicial to allow the [p]laintiff to parade out various alleged 'violations' of the [UCSPA] as 'proof' of bad faith." Dkt. # 101, at 2. Further, defendant states that introducing such evidence is contrary to established Oklahoma law, as stated in Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London, 348 P.3d 216 (Okla. Civ. App. 2015).

Plaintiff responds (Dkt. # 128), that he does not intend to represent that a violation of the UCSPA is a per se violation of the duty of good faith and fair dealing, but rather intends to use the UCSPA to argue that defendant's claims handlers did not abide "by minimum standards of claims handling conduct." Dkt. # 128, at 6. Specifically, plaintiff asserts he "intends to utilize the standards set forth above for exactly what they are: best practices that have been almost universally adopted throughout the United States and in the insurance industry." Id. at 5. Plaintiff argues that such use does not violate the statement of law in Aduddell because, unlike in that case, plaintiff's proposed jury instructions will not improperly state that "any deviation from the conduct prohibited by the UCSPA constituted an 'unfair' practice as a matter of law." Id. Defendant filed a reply (Dkt. # 137), stating that contrary to plaintiff's contentions, Oklahoma federal courts frequently find that

information relating to the UCSPA should be properly excluded via motions in limine.  Dkt. # 137, at 1-4.

"The [UCSPA, OKLA. STAT. tit. 36, §§ 1250.1–1250.17], does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing." Aduddell, 348 P.3d at 233. "The [UCSPA] does not create a private remedy." Id.  At summary judgment, "the UCSPA can provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for bad faith." Beers v. Hillory, 241 P.3d 285, 294 (Okla. Civ. App. 2010).  However, while the UCSPA "may provide guidance to a trial court in determining whether to grant summary judgment, . . .  it does not function as an appropriate guide for a jury to determine bad faith." Aduddell, 348 P.3d at 234.

Given the above, the Court will grant defendant's motion to the extent defendant seeks to prohibit references to violations of the UCSPA and standards therein in a manner that conflicts with Aduddell–i.e., there can be no mention of alleged violations of the UCSPA, the standards stated therein cannot be presented as determinative of whether there was a violation of Oklahoma bad faith law, and, obviously, there can be no suggestion that a violation of such standards equates to a finding of bad faith.  See, e.g., Stewart v. Bhd. Mut. Ins. Co., No. 16-CV-488-JED-FHM, 2018 WL 4092018, at *6 (N.D. Okla. July 10, 2018) (granting the motion in limine to exclude "questions or contentions to the effect that [d]efendant violated the UCSPA" as they "would be confusing for the jury and unfairly prejudicial"); Godfrey v. CSAA Fire & Cas. Ins. Co., No. CIV-19-00329-JD, 2020 WL 1056306, at *5 (W.D. Okla. Mar. 4, 2020) (holding "evidence and reference to the Oklahoma [UCSPA] as a proxy to determine bad faith is irrelevant under Federal Rule of Evidence 401 and,

6

regardless, would be unfairly prejudicial and confuse the issues under Federal Rule of Evidence 403.).

However, the Court finds that it may be possible to reference industry standards of care outside of the context of UCSPA, and so it denies defendant's motion to the extent it seeks to bar the admission of information relating to industry standards.  As plaintiff has not pointed to the specific manner in which he intends to offer evidence relating to the applicable standards, the Court is not in a position to assess the potential evidence, the manner in which it will be offered, its relevance, and potential prejudice.  As a result, to the extent defendant seeks to bar all references to the applicable standards of conduct for the insurance industry, the motion is denied without prejudice.  Shotts v. GEICO Gen. Ins. Co., No. CIV-16-1266-SLP, 2018 WL 4832625, at *5 (W.D. Okla. July 12, 2018).  This follows the reasoning offered in in Magallan v. Zurich Am. Ins. Co., No. 16-CV-0668-CVE-FHM, 2017 WL 4012964 (N.D. Okla. Sept. 12, 2017), regarding expert testimony on the UCSPA and industry standards.  In that case, this Court barred expert testimony regarding "Oklahoma law as to bad faith or the USCPA" and whether the UCSPA had been violated, but permitted the expert to testify about "applicable industry standards."  2017 WL 4012964, at *11. Here, the Court will not categorically bar admission of any reference to the UCSPA, as the UCSPA might be offered in a manner useful for determining industry standards.  The Court reserves ruling on the motion to the extent it seeks to bar admission of any reference to the UCSPA.

### C. Defendant's Motion in Limine No. 3 (Dkt. # 102)

In defendant's third motion in limine (Dkt. # 102), defendant argues plaintiff should be barred from making references to punishing defendant and/or punitive damages arguments in the first stage of trial.  Specifically, defendant argues that plaintiff should "be prohibited from making legal

arguments or related statements concerning: (1) punitive damages, (2) punishing the [d]efendant, (3) making an example of [d]efendant, and/or (4) sending a message until the jury has determined that [p]laintiff is entitled to compensatory damages." Dkt. # 102, at 1. Plaintiff responds (Dkt. # 129) that he understands the Court will likely prohibit mention of punitive damages in the first phase of trial, but argues that defendant's motion in limine seeks to impermissibly curtail plaintiff's ability to prove its case of bad faith. Dkt. # 129, at 1, 5. Specifically, plaintiff states defendant "ignores the fact that this action for violation of the duty of good faith and fair dealing requires [p]laintiff to prove [defendant]'s conduct was undertaken with the degree of culpability necessary to support his claim for punitive damages." Id. In reply (Dkt. # 138), defendant reurges the arguments in its motion.

As an initial matter, as noted in the Court's December 18, 2020 opinion and order denying defendant's motion to reconsider (Dkt. # 122), the Court will follow its standard procedure under federal law for cases involving a request for punitive damages. The trial will be divided into two phases. In the first phase, the jury will consider defendant's liability for breach of the duty of good faith and fair dealing, and plaintiff's compensatory damages. The jury will consider evidence of punitive damages and the amount thereof only in a second phase of trial, which occurs only if the jury finds by clear and convincing evidence that defendant can be held liable for punitive damages under OKLA. STAT. tit. 23, § 9.1. Punitive damages or a possible second phase of trial will not be mentioned by any party or witnesses during the first phase.

The remaining three references defendant seeks to bar–references to punishing, sending a message, or to making an example of defendant–are similarly excluded from the first phase of trial. As this Court stated in B.H. v. Gold Fields Mining Corp., No. 04-CV-0564-CVE-PJC, 2007 WL

439031 (N.D. Okla. Feb. 1, 2007), "the words 'punitive damages,' 'punish' or 'send a message' and the like are not to be mentioned during phase one and the jury [will] hear evidence related to plaintiff['s] claim for actual damages only. . . ."   2007 WL 439031, at *3.   References to non-compensatory damages are outside the scope of the first phase of trial and will be considered prejudicial. See, e.g., Moody v. Ford Motor Co., 506 F. Supp. 2d 823, 838 (N.D. Okla. 2007). Plaintiff's concerns that he will not be able to present "evidence" to prove defendant's bad faith "conduct" as a result of this ruling are unfounded.  Plaintiff may present all evidence as to bad-faith conduct that may merit a punitive award, without mentioning phrases that are evocative of punishment or retribution.[2]

### D. Defendant's Motion in Limine No. 4-8  (Dkt. # 103)

In defendant's fourth motion, defendant asks the Court to bar the admission of five types of information or argument:  "golden rule testimony," arguments or suggestions that defendant should look for reasons to pay a claim, that defendant owes the "benefit of the doubt" to its insureds, references to defendant's claim handling manual, and lay witness testimony on what is "fair" or "reasonable" (Dkt. # 103).

Defendant first asks the Court to bar the use of "golden rule testimony."  Plaintiff responds (Dkt. # 132), that he does not object to the prohibition of "golden rule testimony."  Dkt. # 132, at 4-5.  Accordingly, the Court finds that counsel shall refrain from arguing the golden rule, i.e., counsel cannot ask "that the jurors should put themselves into the shoes of the plaintiff, and do unto the plaintiff as they would have the plaintiff do unto them under similar circumstances."  Arguments

---

[2]     To the extent plaintiff intends to seek leave of the Court to ask questions regarding punitive damages during voir dire, the Court notes that this is a preliminary ruling and that the Court will consider plaintiff's request if and when it is made.

About Damages—Golden Rule Argument, 33 Fed. Proc., L. Ed. § 77:268 (Mar. 2021); see also Blevins v. Cessna Aircraft Co., 728 F.2d 1576 (10th Cir. 1984).

Plaintiff, however, does object to the motion in limine insofar as it seeks to exclude arguments or suggestions that defendant should look for reasons to pay a claim, that defendant owes the "benefit of the doubt" to its insureds, references to defendant's claim handling manual, and lay witness testimony on what is "fair" or "reasonable."  The Court addresses these in turn.

Defendant seeks an order instructing plaintiff, plaintiff's counsel, and witnesses "not to argue or suggest to the jury, in any manner, that [defendant] should look 'harder' for ways to pay a claim than to deny a claim." Dkt. # 103, at 2.  Defendant argues that "[a]n unbiased investigation necessarily requires the first-party insurer to give equal consideration to the interests of its insured and itself," so instructing otherwise is contrary to law, and misleading and prejudicial.  Id. at 3. Plaintiff responds that he will not present the "argument that [defendant]'s internal claims philosophy," as stated by its corporate witnesses or internal claims procedures, "is 'the law.'" Dkt. # 132, at 6.  Plaintiff also states he will not "falsely represent to the jury that 'the law' requires [defendant] to look harder for reasons to pay a claim than it does to not pay a claim."  Id.

Given the above, the parties appear to agree that neither will "argue or suggest to the jury, in any manner, that [defendant] should look 'harder' for ways to pay a claim than to deny a claim." Dkt. # 103, at 2; see also Dkt. # 132, at 4 (plaintiff states that defendant's "only job in processing insurance claims made by its insureds is to look for reasons to pay or deny claims") (emphasis added).  The parties appear to share the belief that what is required is an unbiased investigation. Neither party shall be permitted to mischaracterize that legal obligation in a way that is contrary to

law and misleading.  Objections to testimony that mischaracterize the insurers burden will be sustained.

Defendant next asks the Court to prohibit plaintiff, plaintiff's counsel, and witnesses from "mentioning, referring to, arguing, or suggesting to the jury, in any manner, that [defendant] is required to give the 'benefit of the doubt' to its insured when handling claims." Dkt. # 103, at 3. Plaintiff responds that he "does not and will not argue that [defendant] has a duty to give its insureds the 'benefit of the doubt.'" Dkt. # 132, at 6.  Accordingly, this part of the motion is granted by agreement, as plaintiff recognizes that making such statements would be contrary to law and misleading.

Defendant additionally asks the Court to prohibit plaintiff, plaintiff's counsel, and witnesses from referencing defendant's "claim handling manual." Dkt. # 103, at 3.  Defendant argues that "[c]laims manuals and guidelines do not establish standards of care for bad faith purposes," and, that defendant's "liability for bad faith must be determined according to Oklahoma law." Id.  Plaintiff responds that he does not intend to offer the manual for the purposes of establishing a legal standard to which defendant should be held, but rather "to provide the jury a framework within to judge the reasonableness of its handling of [p]laintiff's claim and the level of culpability it ought to attribute said conduct." Dkt. # 132, at 7.  Plaintiff argues that if defendant's "well-known claims handling philosophy also informs its adjusters to follow the terms of said policy, it becomes more likely that those actions are not mere 'mistakes.'" Id. at 8.  Further, plaintiff contends that this evidence is required to determine whether defendant "adequately trained and supervised its claim handling employees and whether the actions of [defendant] were reasonable." Id.  Plaintiff also argues that the manual can be introduced under Tenth Circuit law as stated in Vining on Behalf of Vining v.

11

Enterprise Financial Group, Inc., 148 F.3d 1206 (10th Cir. 1998), wherein the court found that an insurer's claim handling manual was admissible in a bad faith case. While the facts in Vining are different from those before the Court, at this juncture, the Court is not inclined to categorically bar the admission of defendant's claim handling manual at trial.

Plaintiff represents that, as defendant requests, plaintiff will not use the manual as a means to demonstrate bad faith as a legal standard. To state otherwise would be contrary to law. Therefore, defendant's motion is granted to the extent it seeks to bar such references. However, the Court cannot state that plaintiff may not be able to introduce the manual or portions thereof to demonstrate unreasonable disregard for internal claims handling procedures by defendant's employees. In Vining, the manual was admitted under Fed. R. Evid. 406 to demonstrate a pattern or practice of rescinding insurance polices. 148 F.3d at 1219 (finding admission of the evidence not an abuse of discretion where it was offered to demonstrate "a pervasive, consistent pattern of abuse"). Here, plaintiff appears to intend to offer the evidence to demonstrate a pattern of ineffective training and to refute the inference that various employees disregarded the manual's standards "by mistake," as asserted by defendant. Without being entirely certain of the manner in which the evidence will be offered in this context, the Court reserves ruling to the extent not ruled on herein.

Defendant also asks the Court to prohibit plaintiff, plaintiff's counsel, and witnesses "from making statements that allude to or purport to define Oklahoma's bad faith standard" including using "vague phrases such as 'unfair' or 'unreasonable' to describe [p]laintiff's perception of [defendant]'s handling and evaluation of [p]laintiff's claim." Dkt. # 103, at 7. Defendant states that, while "[p]laintiff may believe this testimony is helpful to the jury, it is tantamount to allowing a lay witness –and an expert witness–to instruct the jury on Oklahoma's bad faith law." Id. Plaintiff responds that

"in order to meet his burden under Oklahoma law, [p]laintiff must present evidence and argument related to both the reasonableness and fairness of [defendant]'s conduct." Dkt. # 132, at 10.

The parties positions are not at odds. Defendant's request–that plaintiff and plaintiff's witnesses be prohibited from characterizing defendant's conduct as "unfair" or "unreasonable"–should be granted, as such characterizations would be prejudicial and invade the province of the jury to determine what is and is not unreasonable. However, plaintiff's counsel may argue that the evidence will or has shown that defendant has acted "unfairly" or "unreasonably" toward plaintiff. To the extent defendant seeks to bar plaintiff's counsel from referencing the standard of law in arguing his case to the jury, the motion is denied. Counsel may argue in accordance with the law stated in the Court's jury instructions.

### E. Defendant's Motion in Limine No. 9  (Dkt. # 104)

In defendant's next motion in limine (Dkt. # 104), defendant argues that any evidence of plaintiff's alleged litigation-induced distress should be deemed inadmissible. Defendant contends that "[s]tress or anxiety caused by the litigation, including giving a deposition, rather than the alleged 'bad faith' itself, does not constitute such compensable injury." Dkt. # 104, at 3 (citing Knussman v. Maryland, 272 F.3d 625, 641–642 (4th Cir. 2001)). Plaintiff responds (Dkt. # 130), that no Tenth Circuit or Oklahoma authority supports that proposition, and further argues that the Oklahoma Uniform Jury Instructions support the opposite proposition–that litigation-induced stress is a compensable injury. Dkt. # 130, at 5 (citing Okla. Unif. Jury Instr. 22.4). In reply (Dkt. # 139), defendant states that, contrary to what plaintiff asserts, federal courts in Oklahoma have found litigation-induced distress is not compensable. Dkt. # 139, at 1-2 (citing Smith v. CSAA Fire & Cas.

13

Ins. Co., No. CIV-17-1302-D, 2020 WL 4340546, at *6 (W.D. Okla. July 28, 2020) (collecting cases); and Godfrey, 2020 WL 1056306, at *7).

The Court has reviewed the decisions in Smith and Godfrey, and finds them persuasive. Those decisions draw from Tenth Circuit and Oklahoma state court rulings, as well as several other federal and state court decisions, to support the proposition that litigation-induced distress is not compensable in a bad faith action against an insurer. Additionally, in this district, one decision expressly admonished a party that argued Oklahoma law allowed the recovery of such litigation-induced damages. Stroud v. Liberty Mut. Ins. Co., No. 15-CV-363-GKF-PJC, 2016 WL 10038544, at *3 (N.D. Okla. Oct. 11, 2016). In Stroud, the court found that Oklahoma courts had never made such a finding. Id. The court also noted that such a proposition conflicted with findings in other circuit courts. Id. (citing Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 79 (1st Cir. 2001), for the proposition that "litigation-induced stress is not ordinarily recoverable as an element of damages"; and Stoleson v. United States, 708 F.2d 1217, 1223 (7th Cir. 1993), for the proposition that "[i]t would be strange if stress induced by litigation could be attributed in law to the tortfeasor.").

The logic in these decisions is further supported by Tenth Circuit decision in Roesler v. TIG Ins. Co., 251 F. App'x 489 (10th Cir. 2007), wherein the court found that it would be unacceptable "to hold an insurer's acceptable litigation tactics as evidence of bad faith" as it would "deny the insurer a complete defense." 251 F. App'x at 498. Because litigation tactics are not appropriately presented as evidence of bad faith, they are not appropriately presented to establish damages relating to a claim of bad faith.

14

**F. Defendant's Motion in Limine No. 10 (Dkt. # 105)**

In defendant's final motion in limine (Dkt. # 105), defendant argues that plaintiff should not be permitted to argue or present evidence that his compensatory damages should be based on defendant's earnings.  In an answer to one of defendant's interrogatories, plaintiff stated he is seeking compensatory damages equivalent to "4 months of [defendant]'s income associated with premiums paid by Oklahomans." Dkt. ## 105, at 1; 105-1, at 3.  Defendant contends that "[t]he amount of premiums [defendant] collects from other insureds is wholly irrelevant to [p]laintiff's 'concrete loss'" and that "allowing [p]laintiff to suggest an 8-figure compensatory damage award in case where [p]laintiff has no evidence of damages at all is unduly prejudicial." Dkt. # 105, at 1.

In his response (Dkt. # 131), plaintiff argues that a damages figure based on premiums paid by Oklahoma residents for four months is a correct measure of plaintiff's damages as  "[t]he only means of assessing the betrayal felt by [p]laintiff is by direct reference to the entity that broke its promise."  Plaintiff argues that because "[p]laintiff is aware of the massive influx of premiums received by [defendant] during the time it failed to pay him the benefits he was owed. This knowledge is at the root of the significant betrayal he feels. Plaintiff must be allowed to offer testimony as to why he was damaged." Dkt. # 131, at 5.

Evidence related to the income, earnings, wealth or property of defendant is generally excluded at the liability phase of trial.  See, e.g., T.G. v. Remington Arms Co., No. 13-CV-0033-CVE-PJC, 2014 WL 2589443, at *9 (N.D. Okla. June 10, 2014); see also  Basden v. Mills, 472 P.2d 889, 896 (Okla. 1970) (noting that "plaintiffs could properly have offered evidence as to defendant's financial worth" if it were "[i]n connection with their prayer for punitive

damages."). Plaintiff cites no caselaw supporting a departure from this practice and presents no compelling reason to depart from this practice.

Further, the Oklahoma Uniform Jury Instructions expressly state that "[i]n fixing the amount you will award [Plaintiff] you may consider the following elements: 1. Financial losses; 2. Embarrassment and loss of reputation; and 3. Mental pain and suffering." Okla. Unif. Jury Instr. 22.4. That instruction does not include any reference to defendant's income, earnings, wealth or property. In fact, including such an expanded category of information in the category of information to be considered would render the instruction meaningless.

Plaintiff may demonstrate defendant's liability to him by showing actual damages sustained by him without reference to defendant's resources. That defendant has resources does not determine whether it breached its duty of good faith–defendant's resources are irrelevant to the question of liability in the first phase of trial. Accordingly, defendant's motion in limine excluding references to defendant's earnings should be granted as to any issues other than punitive damages.

**IT IS THEREFORE ORDERED** that defendant's motion in limine no. 1 (Dkt. # 100) is **denied**; defendant's motion in limine no. 2 (Dkt. # 101) is **granted in part** and **denied in part** as outlined herein; defendant's motion in limine no. 3 (Dkt. # 102) is **granted**; defendant's motion in limine nos. 4-8 (Dkt. # 103) is **granted in part** as to "golden rule testimony," references that defendant owes the "benefit of the doubt" to its insureds as a matter of law, references to defendant's claims handling manual as a legal standard, and lay witness testimony on what is "fair" or "reasonable," and **denied in part** as to referencing defendant's claim handling policies; defendant's motion in limine no. 9 (Dkt. # 104) is **granted**; and defendant's motion in limine no. 10 (Dkt. # 105) is **granted**.

**DATED** this 25th day of May, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE